IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STEVENS COUNTY, a Municipal Corporation, | ) ) ) | No. 37467-0-III |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | UNPUBLISHED OPINION |
| STEVENS COUNTY SHERIFF'S DEPARTMENT; NORTHEAST WASHING TON ALLIANCE COUNSELING SERVICES, | ) ) ) ) ) | |
| Defendants, | ) ) | |
| STATE OF WASHINGTON, | ) ) | |
| Intervenor. | ) | |

STAAB, J. — Stevens County (County) brought suit under the Uniform Declaratory

Judgment Act (UDJA), ch. 7.24 RCW, against Steven's County Sheriff and Northeast

Washington Alliance Counseling Services (NEWACS) to challenge the constitutionality

of the mental health firearms restriction of RCW 71.05.182. The State of Washington

intervened. Stevens County and the State filed cross-summary judgment motions. The

trial court denied the State's cross motion for summary judgment, concluding that the

case presented a justiciable claim that could be decided by declaratory judgment. The

court also denied the County's motion for summary judgment, concluding that the statute was constitutional. The County appealed and the State cross-appealed.

We deny the County's appeal and grant the State's cross-appeal, concluding that the case fails to present a justiciable controversy that can be decided under the UDJA.

FACTS

A new enactment to Washington's civil commitment laws, RCW 71.05.182 became effective July 28, 2019, prohibiting possession and ownership of firearms by those individuals detained for mental health issues under RCW 71.05.150 and RCW 71.05.153. LAWS OF 2019, ch. 247, § 1. The bill was consistent with a policy suggestion put forward by the Attorney General's Office, modeled after a California statute found constitutional there, and supported by mental health professionals to allow for a cool down period after a crisis event, potentially giving time for families to obtain an extreme risk protection order. *Id.* Effective January 1, 2021, it was amended to increase the seventy-two hour detention period to "not more than one hundred twenty hours." LAWS OF 2020, ch. 302, § 13.

The County, as sole plaintiff, filed suit under the UDJA, alleging that the "Involuntary Treatment Act" (ITA), RCW 71.05.182, facially violates procedural due process and the Second Amendment right to bear arms. The complaint names as defendants Stevens County Sheriff's Department (Sheriff) and Northeast Washington Alliance Counseling Services (NEWACS). The complaint alleges that the Stevens

2

County Sheriff's Department has duties under RCW 36.28.010 and that NEWACS is a behavioral health organization "empowered by the County" and subject to the direction of the Stevens County Commissioners. The complaint goes on to assert that the Sheriff and NEWACS enforce the ITA. While the complaint alleges that the ITA causes "liability" to the County, it does not plead any factual allegations supporting that conclusion. The complaint otherwise contains legal conclusions. The office of the Stevens County Prosecuting Attorney appeared for Stevens County, and by special appointed deputy prosecutor also appeared for Stevens County Sheriff's Department and NEWACS. It is unclear from the record whether the Sheriff's Department or NEWACS ever filed a response to the County complaint.

As required by statute, the County served the office of the Attorney General of Washington (hereinafter State) with a copy of the summons and complaint. The State filed an answer and affirmative defense asserting the constitutionality of the ITA and the duty of the Sheriff's Department to enforce the laws of the state of Washington. The State also asserted that the County had failed to present a justiciable controversy. The State intervened in the action by agreed order on October 8, 2019, at the County's temporary injunction motion hearing. The County filed a motion for a temporary restraining order. Attached as support to the County's motion for temporary injunction was a declaration by attorney Will M. Ferguson. Mr. Ferguson testified in his affidavit to the following relevant facts (numbering does not match affidavit):

3

1. As an elected official, Sheriff Manke operates with discretion, independent of the authority of the Stevens County legislative authority.

Clerk's Papers (CP) at 18.

2. Upon information and belief, NEWACS has filed 149 petitions for involuntary commitment, as of July 26, 2019 . . . nearly five petitions per week.

CP at 19.

3. Upon information and belief, NEWACS filed approximately 243 petitions for involuntary commitment in 2018.

CP at 18.

During the hearing for a temporary injunction, the County sought to release the defendants from their legal duties of notice and gun seizure under RCW 71.05.182. The County acknowledged that individuals under the statute were screened by mental health professionals and determined to be a substantial likely danger, but asserted that existing procedural safeguards were lacking. The County claimed it was subject to "liability" through the actions of the Sheriff and NEWACS. The State pointed out that the County did not present any facts to support its position and the County conceded that it did not "think that we need facts in a purely legal argument." Report of Proceedings (RP) at 6. The Sheriff's office and NEWACS did not oppose the temporary order and expressed their own concerns about the constitutionality of the statute. The trial court denied the motion on the basis that an injunction was not necessary for a nonemergent situation.

4

Stevens County then filed a motion for summary judgment. The State moved to continue the summary judgment hearing to allow for discovery. The County objected to the delay on the basis that information on the impact of the statute on Steven's County residents was irrelevant. The Sheriff and NEWACS took no position. The court denied the continuance for discovery agreeing that a facial constitutional challenge did not require any facts, but granted a short period for briefing. The State filed a response to the motion for summary judgment and a cross motion for summary judgment, asserting that there were no facts upon which to grant the County's motion and the County lacked standing and a justiciable claim. In its summary judgment reply brief, the County argued that "Both Defendants are governed by the Plaintiff." Both the Sheriff's Department and NEWACS are legally obligated to follow the law but "Stevens County would command the Defendants to not administer and enforce the Act." *Id*. Stevens County asserted a conjoined interest with the Sheriff's Department and NEWACS to "ignore" State law. Ultimately, the trial court denied the County's motion and the State's cross motion, but dismissed the County's complaint for declaratory judgment.

## ANALYSIS

A. STANDARD OF REVIEW

This matter is before the court on appeal from summary judgment, so review is de novo. *Island County v. State*, 135 Wn.2d 141, 146, 955 P.2d 377 (1998). Review of a trial court's denial of declaratory judgment relief is de novo. *Nollette v. Christianson*,

No. 37467-0-III
*Stevens County v. Stevens County Sheriff's Dept.*

115 Wn.2d 594, 599-600, 800 P.2d 359 (1990).  We review issues of constitutionality de novo.  *State v. Sieyes*, 168 Wn.2d 276, 281, 225 P.3d 995 (2010).

    B.   JUSTICIABLE CONTROVERSY

       The UDJA, ch. 7.24 RCW, is designed to settle and afford relief from insecurity and uncertainty with respect to rights, status and other legal relations, and is to be liberally construed and administered.  RCW 7.24.120; *Clallam County Deputy Sheriff's Guild v. Bd. of Clallam County Comm'rs*, 92 Wn.2d 844, 848, 601 P.2d 943 (1979).  The Superior Court denied the State's motion to dismiss for lack of justiciable controversy, but its analysis is not part of the record.  Nevertheless, since justiciability is a jurisdictional prerequisite to an action under the UDJA, and the State cross-appealed the superior court's decision, we must consider this issue first.  *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 814-15, 514 P.2d 137 (1973); *Burman v. State*, 50 Wn. App. 433, 439, 749 P.2d 708 (1988).

       In this case, Stevens County has filed an action under the UDJA, claiming that enforcement of the ITA will violate the constitutional rights of those who are involuntarily committed.  "A challenge to the constitutionality of a statute by means of a declaratory judgment must be justiciable before it will be considered."  *Snohomish County v. Anderson*, 124 Wn.2d 834, 840, 881 P.2d 240 (1994).  The four elements for establishing a justiciable controversy are well-settled and include: "(1) . . . an actual, present and

6

existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive." *Id.* Folded into these elements are the common law restraint doctrines of mootness, ripeness, and standing. *To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001). All four elements must coalesce so that a court does not step "into the prohibited area of advisory opinions." *Diversified*, 82 Wn.2d at 814.

In this case, the County has failed to demonstrate a direct and substantial interest in the issues raised by its pleadings. A plaintiff must also show a direct and substantial interest when filing a declaratory judgment action. RCW 7.24.020.[1] This factor often overlaps or inheres with the common law doctrine of standing. *To-Ro Trade Shows*, 144 Wn.2d at 414. Generally speaking, the requirement of standing prohibits a litigant from raising the legal right of another. *Grant County Fire Prot. Dist. No. 5 v. City of Moses*

---

[1] RCW 7.24.020: "A person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

*Lake*, 150 Wn.2d 791, 802, 83 P.3d 419 (2004). "'The kernel of the standing doctrine is that one who is not adversely affected by a statute may not question its validity.'" *Alim v. City of Seattle*, 14 Wn. App. 2d 838, 851, 474 P.3d 589 (2020) (quoting *Walker v. Munro*, 124 Wn.2d 402, 419, 879 P.2d 920 (1994)).

Courts have developed a two-part test to determine standing under the UDJA. "The first part of the test asks whether the interest sought to be protected is '"arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question."' The second part of the test considers whether the challenged action has caused '"injury in fact,"' economic or otherwise, to the party seeking standing. Both tests must be met by the party seeking standing." *Grant County Fire Prot. Dist. No. 5*, 150 Wn.2d at 802 (citation omitted) (quoting *Save a Valuable Env't v. City of Bothel*, 89 Wn.2d 862, 866, 576 P.2d 401 (1978) (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 152-53, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1970))).

In this case, the County is challenging the constitutionality of the ITA, claiming that it violates an individual's Second Amendment and due process rights. In its reply brief, the County argues that it has a direct interest in the constitutionality of the statute because it is the governing body of the Sheriff's Office, which is charged with enforcing the statute. The County does not cite any authority to suggest that its responsibility to enforce a statute is an interest within the zone of interests protected or regulated by the

statute. The County's interest in protecting the rights of unidentified individuals who are not named as parties is not an interest that is protected or regulated by the ITA.

On the contrary, case law is clear that "'[o]ne may not . . . challenge the constitutionality of a statute unless it appears that he will be *directly* damaged in person or in property by its enforcement.'" *To-Ro*, 144 Wn.2d at 411-12 (quoting *DeCano v. State*, 7 Wn.2d 613, 616, 110 P.2d 627 (1941)); *see also Walker v. Munro*, 124 Wn.2d at 412 (finding that petitioners' failure to identify any "actual, concrete harm" caused by Initiative 601 precluded declaratory action). Enforcing the mental health firearms restriction of RCW 71.05.182 does not operate as an infringement on the constitutional rights of Stevens County, the Sheriff's office, or NEWACS. Stevens County does not have a Second Amendment right to bear arms.[2] Nor can it assert its own due process rights or the due process rights of others. *Lakehaven Water & Sewer Dist. v. City of Federal Way*, 195 Wn.2d 742, 770, 466 P.3d 213 (2020).

In *Kitsap County v. City of Bremerton*, the court dismissed a challenge to a statute requiring judges to be attorneys on the basis that merely paying the judicial salaries was not injury and did not support standing or demonstrate that enforcement of the statute

---

[2] *District of Columbia v. Heller*, 554 U.S. 570, 595, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) (The Second Amendment protects an individual's right to bear arms.); *City of Seattle v. State*, 103 Wn.2d 663, 668, 694 P.2d 641 (1985) (municipal corporations do not have personal rights).

9

infringed on the County's constitutional rights. 46 Wn.2d 362, 367, 281 P.2d 841 (1955).

"It is elementary that one attacking the validity of an act must show that its enforcement operates as an infringement on the complaining party's constitutional rights." *Id*. at 366. The court specifically rejected the County's alleged interest, noting that the County is a legal subdivision of the state created by its sovereign power for administration of governmental affairs. *Id*. at 368. Ultimately, the court concluded that the mutual goal of both the County and City in bringing the action was to attack the validity of the statute, and their agreement or consent could not confer jurisdiction on the court when the County lacked standing and the parties were not adverse. *Id*. at 366, 369.

The dissent attempts to marginalize the holding in *Kitsap* by suggesting that it has been implicitly overruled. Dissent at 10. On the contrary, *Kitsap's* reasoning was recently reaffirmed by the Supreme Court in *Lakehaven Water and Sewer Dist*. *Lakehaven*, 195 Wn.2d 742. In *Lakehaven*, several water districts challenged the constitutionality of an ordinance imposing an excise tax on the districts, claiming that the ordinance violated the federal and state due process clauses. The Supreme Court concluded that the districts lacked standing to bring this claim because "municipal corporations do not have rights under the equal protection or due process clauses of the state and federal constitutions." *Id*. at 770.

> "'The due process clause protects people from government; it does not protect the state from itself. Municipal corporations are political subdivisions of the state, created for exercising such governmental powers of the state as

> may be entrusted to them, and they may not assert the protection of the due
> process clause against action of the state government.'"

*Id*. (quoting *City of Seattle*, 103 Wn.2d at 681) (Dolliver, J., dissenting) (quoting *City of*

*Mountlake Terrace v. Wilson*, 15 Wn. App. 392, 394, 549 P.2d 497 (1976)) (citing *Kitsap*

*County*, 46 Wn.2d at 366).

This case presents a scenario much like the Supreme Court addressed in *Kitsap*

*County*. Stevens County alleges that the ITA violates the Second Amendment and due

process rights of persons who are involuntarily committed. In other words, Stevens

County is asserting the rights and interests of third parties. It is clear that the objective of

both parties in bringing this action is to assert their mutual interest in challenging the

statute. The County's interest is not within the zone of interests protected or regulated by

the ITA or the constitutional provision it asserts on behalf of others.

The dissent disagrees and finds that Stevens County has a direct interest in the

proper enforcement of the ITA which may violate the constitutional rights of individuals.

None of the cases cited by the dissent support its position that a County's interest in the

proper enforcement of a statute will provide the County with standing. Nor do these

cases find standing when a County asserts the individual or due process rights of others.

For instance, the dissent relies on the holding in *Alim v. City of Seattle*, 14 Wn. App. 2d

838. In that case, gun owners sued to challenge the constitutionality of a criminal

ordinance requiring them to store their firearms in locked safes. The court found the gun

11

owners had standing to challenge the ordinance because their rights and interest were directly affected by the ordinance. *Id*. at 854. In *Alim* the plaintiffs were asserting their own rights. In this case, the County is asserting the rights of others. The County does not, and cannot show that enforcement of the ITA "will directly affect" the County's individual rights.

Nor does the County establish direct injury necessary to establish standing. The only injury alleged is a brief statement in the complaint that the ITA causes "liability" to the County without any further explanation. But the possibility of some future claim for damages does not present a justiciable issue. *Diversified*, 82 Wn.2d at 814; *Lewis County v. State*, 178 Wn. App. 431, 437, 315 P.3d 550 (2013).

In *Lewis County*, the County sought a declaratory judgment that the State, and not the County, would be liable for future tortious acts of the County's judicial branch. In dismissing the case for lack of justiciability, the court held that "the County presents a question of an unpredictable contingency because the County's action did not include facts of any financial liability claim that it presently faced." *Id*. at 439. The County failed to establish injury in fact because the County's claim of liability was purely speculative. *Id*. at 437-38.

In this case, the County's claim of injury in fact is even more tangential. The County claims it could be exposed to liability. This alleged injury assumes the statute is found to be unconstitutional, and assumes that someone sues the County for enforcing the

12

statute, and assumes the County would actually be found liable.[3]  Exposure to liability that is contingent on intervening events not certain to occur do not demonstrate injury in fact sufficient to provide standing.

C.    ISSUE OF PUBLIC IMPORTANCE

As an alternative to justiciable controversy, the County makes passing reference to the exception for standing on questions of broad public importance.  If the four elements of justiciable controversy are not met, the court may still exercise its discretion to deliver an advisory opinion in rare cases when "'the interest of the public in the resolution of an issue is overwhelming' and where the issue has been 'adequately briefed and argued.'" *To-Ro*, 144 Wn.2d at 416 (quoting *In re Disciplinary Proceeding Against Deming*, 108 Wn.2d 82, 122-23, 736 P.2d 639, 744 P.2d 340 (1987) (Utter, J., concurring)).  Although our Supreme Court has relaxed the criteria for standing in certain cases that raise an issue of substantial public importance, it has limited this application to cases that have a direct bearing on commerce, finance, labor, industry, or agriculture.  *Lakehaven*, 195 Wn.2d at 771.

---

[3] This alleged "injury in fact" is even more speculative because the County, the Sheriffs, and NEWACS, are most likely immune from liability for performing their duties under the ITA.  *See* RCW 71.05.120.

This case does not present one of the rare exceptions for deciding a declaratory judgment without a justiciable controversy. While the assertion of constitutional rights is important, by itself, it does not qualify a case as one presenting "issues of broad overriding public import" warranting exception from the justiciable requirement. *Diversified*, 82 Wn.2d at 814. Nor will a court invoke the exception to render a judgment on a hypothetical or speculative controversy, where concrete harm has not been alleged. *State v. Walker*, 124 Wn.2d 402, 415, 879 P.2d 920 (1994). In *DiNino*[4] and *Diversified*, the court dismissed both actions as not ripe despite the important rights raised in each case. *Walker*, 124 Wn.2d at 415.

While the issues presented in this case are certainly interesting and important, we decline to ignore the requirement for a justiciable controversy by invoking the exception for questions of public importance. Instead, we follow a long line of cases that refrain from deciding a declaratory judgment without a justiciable controversy. The County lacks standing to challenge the ITA because its interest in this issue is not direct and substantial. Having determined that Stevens County does not present a justiciable controversy and the case does not present an issue of overwhelming public importance, we affirm the trial court's decision on the alternative grounds raised by the State, and

---

[4] *DiNino v. State ex rel. Gorton*, 102 Wn.2d 327, 684 P.3d 1297 (1984).

No. 37467-0-III
*Stevens County v. Stevens County Sheriff's Dept.*

dismiss the County's complaint. Consequently, we decline to review the substance of the

County's complaint.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Staab, J.

I CONCUR:

_____
Lawrence-Berrey, J.

No. 37467-0-III

FEARING, J. (dissenting) — Stevens County brings this declaratory judgment action to procure a ruling declaring RCW 71.05.182, a recent addition to the involuntary treatment act, unconstitutional under the federal constitution's due process clause and the Second Amendment's protection of gun rights. The Washington statute, without any judicial process, revokes the prerogative to bear arms of many individuals involuntarily detained for mental health treatment. This appeal, in addition to presenting noteworthy constitutional issues, poses the question of whether Stevens County may sustain its action when it sues two entities that administer the involuntary treatment act in Stevens County, but who support the legal position of the county, when the county also serves the State of Washington with process and the State intervenes to resist voiding the statute. Sustainability implicates justiciability.

The superior court reached the merits of Stevens County's declaratory judgment action and ruled RCW 71.05.182 to be constitutional. On appeal, the majority rules that the case lacks justiciability, and thus the majority does not address the constitutionality of RCW 71.05.182. I disagree. I would address the merits and rule that the statute breaches the United States constitution's due process clause when juxtaposed with the Second Amendment.

1

No. 37467-0-III
*Stevens County v. Stevens County Sheriff's Office* (dissent)


PROCEDURE

The trial court based its decision and the parties base their arguments on the

content of Stevens County's amended complaint for declaratory judgment. In the

amended complaint for declaratory judgment, Stevens County alleges, in part:

> 1.1 Plaintiff, STEVENS COUNTY (hereinafter the "County"), is a
> county within the boundaries of the State of Washington. . . .
> . . . .
> 1.3 Defendant NORTHEAST WASHINGTON ALLIANCE
> COUNSELING SERVICES (hereinafter "NEWACS") is a Washington
> behavioral health organization tasked and empowered by the County with
> and legally entitled to file petitions, pursuant to RCW 71.05, for
> involuntary commitment for individuals deemed gravely disabled, a danger
> to themselves, and/or a danger to others, based upon mental disability
> and/or substance abuse. The Commissioners for the County are tasked with
> overseeing and directing NEWACS.

Clerk's Papers (CP) at 70-71. NEWACS serves as the designated crisis responder, for

purposes of the involuntary treatment act, in Stevens County.

The amended complaint further alleges:

> 4.10 The [involuntary treatment act, hereinafter "the Act"] purports
> to prohibit, without due process, any person temporarily detained for
> evaluation and involuntary treatment under RCW 71.05.150 or 153, from
> possessing a firearm for a period of six months, regardless if the person is
> thereafter released.
> 4.11 The Party primarily responsible for administering and carrying
> out the commands of RCW 71.05 in Stevens County is NEWACS.
> 4.12 One of the laws enforced by the Sheriff is RCW 9.41.047.
> 4.13 Pursuant to the Act, if a person who was detained under RCW
> 71.05.150 or 153, is subsequently released without being subsequently
> committed for involuntary treatment under RCW 71.05.240, NEWACS,

2

through one of its employees, must advise the person orally and in writing that:

4.14 He or she is prohibited from possessing or controlling any firearm for a period of six months;

4.15 He or she must immediately surrender, for the six-month period, any concealed pistol license and any firearms that the person possesses or controls to the sheriff of the county or the chief of police of the municipality in which the person is domiciled;

. . . .

4.17 Upon discharge, the person may petition a superior court to have his or her right to possess a firearm restored before the six-month suspension period has elapsed by following the procedures provided in RCW 9.41.047(3).

4.18 The Act requires the Sheriff to confiscate and retain possession, without judicial oversight or hearing, of each and every firearm possessed or controlled by a person detained under RCW 71.05.

4.19 The Act prohibits return of the person's confiscated firearm(s) unless the Sheriff complies with RCW 9.41.345.

4.20 The Act therefore commands a person whose firearm was confiscated pursuant to the Act, to then submit to a background check in order to be restored to possession of his or her own personal property.

4.21 The Act adds to the definition of persons who are ineligible to possess firearms. The Act amends RCW 9.41.047, "Restoration of Possession Rights', to include those individuals who have been "detained."

4.22 The Act therefore requires a person formerly detained but not committed, to petition a superior court for restoration of his or her firearm rights. The Act places a burden upon a formerly detained person: the Act requires a person to seek restoration through judicial process of a right that was taken without judicial process.

4.23 The Act suspends a person's right to keep, possess, bear, or control a firearm, without judicial oversight or hearing, immediately upon the temporary detention and filing of a petition under RCW 71.05.

4.24 The Act poses both a risk of liability to the County and a risk to the constitutional rights of County residents.

4.25 The residents of the County possess the right to keep and bear arms, as enshrined in the Second Amendment to the United States Constitution and Article I, Section 24 of the Constitution of the State of Washington.

4.26 The residents of the County possess the right to due process, as enshrined in the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 3 of the Constitution of the State of Washington.

4.27 No adequate remedy exists at law for the Plaintiff that would eliminate the risks of enforcing the Act.

4.28 The Act violates the Second Amendment to the United States Constitution.

4.29 The Act violates Article I, Section 24 of the Constitution of the State of Washington.

4.30 The Act violates the Due Process Clause of the Fifth Amendment to the United States Constitution, through application of the Fourteenth Amendment.

4.31 The Act violates Article I, Section 3 of the Constitution of the State of Washington.

. . . .

CP at 72-74.

Pursuant to RCW 7.24.110, Stevens County served the Washington State Attorney General's Office with the complaint for declaratory judgment. Two weeks after the filing of the complaint, the Attorney General's Office appeared on behalf of the State of Washington.

The State of Washington promptly filed a motion to intervene in this declaratory judgment suit. The State argued that, under the first sentence of RCW 7.24.110, the State possessed an "interest" in the lawsuit and thus needed to become a party to the suit. In its motion to intervene, the State also emphasized that, under the second sentence of RCW 7.24.110, the State had the right "'to be heard.'" CP at 37. Stevens County, the Stevens County Sheriff's Office, and NEWACS joined in the State's motion to intervene. All

4

parties, including the State, agreed that the State of Washington possessed a right of intervention. The trial court granted the State's motion to intervene. The Attorney General's Office, on behalf of Washington State, has since actively, aggressively, astutely, and so far successfully defended the constitutionality of RCW 71.05.182.

In support of a motion for a temporary restraining order, Stevens County alleged that NEWACS filed approximately 243 petitions for involuntary commitment in 2018. NEWACS had filed 149 petitions for involuntary commitment, as of July 26, 2019, the date of the filing of the motion. A mathematical computation demonstrates that NEWACS filed nearly five petitions per week. Counsel for Stevens County signed a declaration confirming these numbers.

Stevens County filed a motion for partial summary judgment seeking a declaration that RCW 71.05.182 was unconstitutional. Despite being defendants, the Stevens County Sheriff's Office and NEWACS registered no objection to the superior court declaring the statute void. The State of Washington cross-moved for summary judgment. In its pleadings the State wrote that both the Stevens County Sheriff's Office and NEWACS possessed "professional responsibilities associated with the ITA [involuntary treatment act]." CP at 124.

The superior court denied both cross motions for summary judgment. Nevertheless, the court dismissed the amended complaint for declaratory judgment with prejudice. The denial of both motions for summary judgment must mean that the court

5

treated the State's motion as a motion to dismiss on the pleadings. I proceed on the basis that the superior court granted a motion to dismiss, rather than summary judgment, although I doubt the outcome would differ.

## LAW AND ANALYSIS

I address justiciability before the constitutionality of RCW 71.05.182. Because case law create the rules of justiciability and because constitutional questions beget many court opinions, this court must review and dissect numerous court opinions to resolve both questions in this appeal. The many germane decisions prolong my dissent.

### I. Justiciability

The State of Washington seeks dismissal of Stevens County's action on the ground that the county's constitutional challenge to RCW 71.05.182 fails to present a justiciable "case or controversy." In turn, the State contends Stevens County lacks standing to bring this action, the county failed to join adverse parties to the action, and Stevens County's claim is not ripe for review, all ingredients of justiciability.

As previously written, this appeal comes to this court following dismissal under CR 12(b)(6). CR 12(b)(6) warrants dismissal only if the court concludes, beyond a reasonable doubt, that the plaintiff cannot prove any set of facts which would justify recovery. *FutureSelect Portfolio Management, Inc. v. Tremont Group Holdings, Inc.*, 180 Wn.2d 954, 962, 331 P.3d 29 (2014). This court assumes all facts alleged in the complaint as true. *Kinney v. Cook*, 159 Wn.2d 837, 842, 154 P.3d 206 (2007). A court

may consider hypothetical facts not part of the formal record when deciding whether to dismiss a complaint pursuant to CR 12(b)(6). *Haberman v. Washington Public Power Supply System*, 109 Wn.2d 107, 120, 744 P.2d 1032, 750 P.2d 254 (1987). The court must view the truth of facts alleged in the complaint and the hypothetical facts in the light most favorable to the nonmoving party. *Didlake v. State*, 186 Wn. App. 417, 422, 345 P.3d 43 (2015).

RCW 7.24 governs declaratory judgment actions. Three sections within RCW 7.24 set the backdrop for this appeal. A prominent section in the chapter, RCW 7.24.020, declares:

> *A person* interested under a deed, will, written contract or other writings constituting a contract, or *whose rights, status or other legal relations are affected by a statute*, municipal ordinance, contract or franchise, *may have determined any question of construction or validity arising under the* instrument, *statute,* ordinance, contract or franchise *and obtain a declaration of rights, status or other legal relations thereunder.*

(Emphasis added.) Another statute, RCW 7.24.120, provides:

> This chapter is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be *liberally construed and administered*.

(Emphasis added.)

Washington adopted its version of the declaratory judgment act in 1935, a year after Congress adopted the federal declaratory judgment act and after many other states adopted similar measures. LAWS OF 1935, ch. 113, at 305. The declaratory judgment act

7

freed courts from enforcing traditional and common law notions of a case or controversy and permitted Washington courts to invoke new procedures and remedies when adjudicating parties' interests and rights. *Acme Finance Co. v. Huse*, 192 Wash. 96, 105, 73 P.2d 341 (1937). The declaratory judgment act seeks to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. *Clallam County Deputy Sheriff's Guild v. Board of Clallam County Commissioners*, 92 Wn.2d 844, 848, 601 P.2d 943 (1979). When a case raises an important constitutional question that impacts branches of government, a declaratory judgment action to resolve the constitutional question is proper. *Clallam County Deputy Sheriff's Guild v. Board of Clallam County Commissioners*, 92 Wn.2d 844, 848 (1979).

The third statute, RCW 7.24.110, reads:

> When declaratory relief is sought, *all persons shall be made parties who have or claim any interest* which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard, *and if the statute, ordinance or franchise is alleged to be unconstitutional, the attorney general shall also be served with a copy of the proceeding and be entitled to be heard.*

(Emphasis added.) RCW 7.24.110 seeks to protect the public should the parties to the declaratory judgment action be indifferent to the result by granting the attorney general the opportunity and right to appear and defend the constitutionality of a state statute. *Parr v. City of Seattle*, 197 Wash. 53, 56, 84 P.2d 375 (1938). The superior court lacks

8

jurisdiction to grant relief in a case challenging the constitutionality of a state statute unless plaintiff serves the declaratory judgment action on the attorney general. *Kendall v. Douglas, Grant, Lincoln & Okanogan Counties Public Hospital District No. 6*, 118 Wn.2d 1, 11-12, 820 P.2d 497 (1991); *Parr v. City of Seattle*, 197 Wash. 53, 56-57 (1938).

Although not expressly stated within the wording of the declaratory judgment act, the act generally requires a "justiciable controversy." *Acme Finance Co. v. Huse*, 192 Wash. 96, 103-04 (1937); *Alim v. City of Seattle*, 14 Wn. App. 2d 838, 847, 474 P.3d 589 (2020). The Washington Supreme Court decades ago heralded four constituent components for a justiciable declaratory judgment action. The claimant must (1) present an actual, present, and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) involving direct and substantial interests, rather than potential, theoretical, abstract, or academic interests, and (4) of which a judicial determination will be final and conclusive. *Diversified Industrial Development Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973). This quartet of ingredients encompasses the concepts of ripeness and mootness, in prong one, and standing, in prong three. *Branson v. Port of Seattle*, 152 Wn.2d 862, 877, 101 P.3d 67 (2004); *Benton County v. Zink*, 191 Wn. App. 269, 278, 361 P.3d 801 (2015). The State contends that

9

Stevens County's declaratory judgment action fails to satisfy elements one, two, and three.

Some Washington decisions and the State of Washington, in this appeal, emphasize the term "case or controversy." This phrase comes from article 3 of the federal constitution and imposes a justiciability requirement, including standing, on a federal court entertaining any lawsuit, including a declaratory judgment action. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016); *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) (Powell, J., concurring). The Washington Constitution has no similar restrictive language on courts, and the declaratory judgment act demands that courts interpret the act liberally. RCW 7.24.120. For this reason, Washington courts sometimes loosen the standards required for justiciability, particularly when the declaratory judgment action challenges the constitutionality of a statute. *Farris v. Munro*, 99 Wn.2d 326, 330, 662 P.2d 821 (1983); *Washington Natural Gas Co. v. Public Utility District No. 1 of Snohomish County*, 77 Wn.2d 94, 96, 459 P.2d 633 (1969). Although this principle of liberality bolsters a ruling in favor justiciability in this appeal, I need not rely on this principle when dissenting.

I address the questions of standing, an adversarial relationship, and ripeness, the prongs on which the State relies, in such order. I agree with Stevens County that the State's brief blends all of the components of justiciability such that the reader cannot tell,

in the State's argument, where one element ends and another begins. I aim to keep these

three constituents of justiciability separate.

## *A. Standing*

The State of Washington contends Stevens County lacks standing for at least three

reasons. According to the State, Stevens County plays no role in enforcing RCW

71.05.182. The State also asserts that the county does not claim that its own

constitutional rights are under attack. Finally, according to the State, Stevens County has

suffered no injury by reason of the adoption of RCW 71.05.182.

Stevens County responds that it plays a role in enforcing RCW 71.05.182 since it

oversees the operations of NEWACS, the body tasked with implementing the statute.

According to the county, it also plays a role in supervising the Stevens County Sheriff's

Office, which enforces RCW 71.05.182. The county contends that both NEWACS and

the sheriff's office need to know the constitutionality of a statute that the legislature

directs them to implement. NEWACS and the sheriff's office face liability for enforcing

an unconstitutional statute, and the county itself will need to pay any damages assessed

against one of the two defendants. Thus, according to Stevens County, the county suffers

injury by the adoption of RCW 71.05.182 or will suffer injury by future implementation

of the statute. Finally, Stevens County alleges that RCW 71.05.182 breaches the

constitutional rights of Stevens County citizens, and the county holds standing to enforce the rights of its residents.

We review standing de novo. *In re Estate of Becker*, 177 Wn.2d 242, 246, 298 P.3d 720 (2013). Standing is not intended to be a high bar. *Washington State Housing Finance Commission v. National Homebuyers Fund, Inc.*, 193 Wn.2d 704, 712, 445 P.3d 533 (2019). The Washington Supreme Court no longer applies a legalistic or rigid test of standing, particularly when a municipality challenges the constitutionality of a state law. *Seattle School District No. 1 v. State*, 90 Wn.2d 476, 493, 585 P.2d 71 (1978); *Vovos v. Grant*, 87 Wn.2d 697, 701, 555 P.2d 1343 (1976).

To establish standing under the declaratory judgment act, a party must demonstrate that: (1) the interest it seeks to protect lies within the zone of interests regulated by the ordinance in question, and (2) the party has suffered or will suffer an "injury in fact." *Lakehaven Water & Sewer District v. City of Federal Way*, 195 Wn.2d 742, 769, 466 P.3d 213 (2020). The party seeking standing must meet both tests. *Grant County Fire Protection District No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 802, 83 P.3d 419 (2004).

### 1. Zone of Interest

To ascertain whether a party's interests are arguably within the zone regulated or protected by the statute in question, we look to the statute's purpose and operation. *Washington State Housing Finance Commission v. National Homebuyers Fund, Inc.*, 193

Wn.2d 704 (2019). A party holds standing as being within the zone of interest, if the challenged statute affects or impacts the party's interests. *Benton County. v. Zink*, 191 Wn. App. 269, 278-79 (2015). Also, the party lies with the zone, if it holds an interest protected or regulated by the statute. *Seattle School District No. 1 v. State*, 90 Wn.2d 476, 493 (1978); *Benton County v. Zink*, 191 Wn. App. 269, 278 (2015). One lies within the zone if the statute specially affects the party as opposed to only affecting the party as a member of the general public. *Kendall v. Douglas, Grant, Lincoln & Okanogan Counties Public Hospital District No. 6*, 118 Wn.2d 1, 10 (1991); *Heavens v. King County Rural Library District*, 66 Wn.2d 558, 562, 404 P.2d 453 (1965). The challenged statute need not expressly grant a party standing. *Benton County v. Zink*, 191 Wn. App. 269, 278 (2015).

In order to analyze whether Stevens County lies within the zone of interest that qualifies it to challenge the constitutionality of RCW 71.05.182, I first address the relationship between NEWACS and the county and the connection between the county and the Stevens County Sheriff.

RCW 36.01.030 reads:

> Its [the county's] powers can only be exercised by the county commissioners, or by agents or officers acting under their authority or authority of law.

Although the statute references other officers of the county, the listing of the county commissioners first in the statute suggests an important role for the commissioners in

13

supervising others. More importantly, the statute implies that all county officers, including the county sheriff, act as agents of the county such that the county holds responsibility and liability for the officers' conduct. When a municipal corporation's agents act within the scope of their employment, their actions are the actions of the municipal corporation itself. *Broyles v. Thurston County*, 147 Wn. App. 409, 428, 195 P.3d 985 (2008).

In *Broyles v. Thurston County*, 147 Wn. App. 409 (2008), this court ruled, in a suit alleging employment harassment by the county prosecutor, that the county, not the prosecutor, was the proper defendant. Under RCW 36.01.010 and .020, the county itself is the only legal entity capable of suing and being sued. The county is no single person or entity. Rather, under RCW 36.01.030, it exercises its powers through various commissioners, officers, and agents. Thus, Thurston County could not shield itself from liability for the alleged misconduct of the county prosecutor. As a county officer, the prosecuting attorney exercised the county's delegated power. RCW 36.16.030.

For purposes of Stevens County's appeal, the county sheriff, as the chief executive officer and conservator of the peace of the county, also exercises the county's delegated power. RCW 36.28.010. Under RCW 36.28.010, the sheriff must defend the county from those who endanger the public peace or safety and must arrest those who violate the criminal laws or break the peace. The actions of the sheriff and his deputies expose Stevens County to liability.

14

RCW 71.05.182 imposes on the designated crisis responder the duty of informing the released detainee of his or her obligation to surrender all firearms to the county sheriff. In turn, the crisis responder must notify the sheriff of the identity of the released detainee so that the sheriff may remove all guns from the releasee. RCW 71.05.020 grants the county the power to designate the crisis responder. The statute declares, in part:

> (16) "Designated crisis responder" means a mental health professional appointed by the county, by an entity appointed by the county, . . . to perform the duties specified in this chapter;

By appointing NEWACS as the crisis responder, Stevens County oversees, in part, the performance of the organization.

Several Washington cases embrace the notion that a county official holds standing to litigate obligations and rights under a statute because the official lies within the statute's zone of interest. Since the county oversees the actions of its officials, it should also rest within the zone of interest.

In *Washington State Housing Finance Commission v. National Homebuyers Fund, Inc.*, 193 Wn.2d 704 (2019), the Washington Supreme Court held that the plaintiff housing finance commission sought to protect an interest arguably within the zone of interest of its enabling statute. The statute authorized the commission to exercise governmental authority when it participated in the Federal Housing Administration mortgage insurance program and implicitly prohibited others such as the defendant

National Homebuyers Fund from acting in the same capacity. Thus, the commission had an interest in preventing unauthorized actors from asserting authority under the commission's statutory functions.

In *Snohomish County Board of Equalization v. Department of Revenue*, 80 Wn.2d 262, 493 P.2d 1012 (1972), a county board of equalization and county assessor sought a declaratory judgment adjudicating a property tax equalization state law to violate the state constitution. On appeal, the Supreme Court declared the law to be constitutional, but not before ruling that the two plaintiffs held standing to challenge the enactment. The plaintiffs possessed a valid interest in securing a declaratory judgment because, without a decision of the court, they were placed in a position of making a determination of a difficult question of constitutional law with the possibility of facing both civil and criminal penalties if they made the wrong choice. The declaratory judgment act was particularly designed to give relief in such situations. The court omitted any mention of whether it was addressing the zone of interest or injury in fact prong of standing.

In *Washington Association for Substance Abuse and Violence Prevention v. State*, 174 Wn.2d 642, 278 P.3d 632 (2012), initiative opponents filed a declaratory judgment action against the State, challenging the constitutional validity of a voter-approved initiative removing the State from distributing and selling spirits and wine. The challengers argued that the initiative violated the single subject rule found in the Washington State Constitution. Intervenors challenged the standing of the plaintiffs. The

Washington Supreme Court disagreed. The association possessed an interest that the statute regulated. The association's goal of preventing substance abuse and violence placed it within the zone of interest of the initiative, which impacted the State's regulation of alcohol.

RCW 71.05.182 impacts Stevens County beyond its impact on the general public. A member of the general public only has an interest in the statute in terms of broad public safety. Stevens County has an interest in preventing unconstitutional action under the involuntary treatment act, which its agents implement and enforce. Stevens County plays a critical role in the restricted area of implementation of the involuntary treatment act, including RCW 71.05.182, and thus holds a direct interest in proper enforcement of the act. The Stevens County sheriff, who enforces the statute, acts on behalf of the county. Thus, the county is the enforcement agency. NEWACS also acts on behalf of the county when directing the detainee, on release, to surrender all firearms. Stevens County is in essence the operator, the power, and the authority behind the implementation of RCW 71.05.182 within county boundaries. Stevens County holds an interest in knowing whether its agents can validly enforce or ignore the provisions of RCW 71.05.182.

RCW 71.05.100 also imposes on a county the costs of a detainee being maintained in a treatment facility if the detainee, his or her spouse, or his estate cannot afford payment. This financial responsibility further affirms Stevens County's participation in the administration of the involuntary treatment act.

17

2. Injury in Fact

I must next analyze, for purposes of standing, the concept of injury in fact. Standing under the declaratory judgment act requires injury in fact. *Nelson v. Appleway Chevrolet, Inc.*, 160 Wn.2d 173, 186, 157 P.3d 847 (2007). To establish harm under the declaratory judgment act, a party must present a justiciable controversy based on allegations of substantial, not speculative or abstract, harm personal to the party. *Grant County Fire Protection District No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 802 (2004). "'Substantial interest'" is not susceptible of a precise definition but must be a matter of judicial determination in each particular case. *State ex rel. Graham v. Northshore School District No. 417*, 99 Wn.2d 232, 242-43, 662 P.2d 38 (1983).

A person whose financial interests are impacted by the outcome of a declaratory judgment action holds standing. *Seattle School District No. 1 v. State*, 90 Wn.2d 476, 493 (1978). Injury in fact can include economic injury, but includes more than economic harm. *Grant County Fire Protection District No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 802 (2004). One Washington court has held that additional financial and administrative burdens imposed on an agency constitutes sufficient injury. *Whatcom County v. State*, 99 Wn. App. 237, 241, 993 P.2d 273 (2000). An inference of noneconomic injury is enough to establish injury for purposes of standing. *Washington State Housing Finance Commission v. National Homebuyers Fund, Inc.*, 193 Wn.2d 704, 710 (2019).

The State of Washington emphasizes that Stevens County did not allege, in its amended complaint for declaratory judgment, that it suffered or will suffer any injury. I know of no rule and the State cites no decision that requires the plaintiff to employ the talismanic phrase "injury in fact" in its opening pleading as long as the facts alleged in the complaint show injury or damage. The court may proceed to entertain the declaratory judgment action despite a lack of allegations of threatened irreparable injury, when the claimant seeks an injunction as long as the parties present a "'real and substantial'" case. *Acme Finance Co. v. Huse*, 192 Wash. 96, 105 (1937).

Stevens County argues that NEWACS employees and Stevens County Sheriff's Department deputies run the risk of violence committed by persons detained under the statute. I agree with the State that this risk does not create standing since risk inheres with any law enforcement. Government officials and contractors face the risk of violence when enforcing statutes that no one contends suffers from constitutional infirmity. I conclude, however, that Stevens County holds standing because of the Stevens County Sheriff's Office being agents of Stevens County and because of the county overseeing the operations of NEWACS. Stevens County faces liability if NEWACS or the sheriff's office enforces an unconstitutional law. RCW 71.05.182 also imposes more administrative costs on the county.

The State of Washington highlights that Stevens County does not allege that it or either of the defendants faces a threat of suit at this time. The State also argues that any

19

injuries to Stevens County residents are hypothetical. No Stevens County detainee has yet to complain about the statute. Nevertheless, standing does not require a current hardship. *Jafar v. Webb*, 177 Wn.2d 520, 525, 303 P.3d 1042 (2013); *Alim v. City of Seattle*, 14 Wn. App. 2d 838, 856 (2020). According to *Alim v. City of Seattle*, 14 Wn. App. 2d 838, 856 (2020), an exposure to liability suffices for ripeness. This rule should also extend to standing.

In *Benton County. v. Zink*, 191 Wn. App. 269 (2015), this court ruled, in a public records act case, that Benton County showed injury in fact because of its exposure to penalties for unlawful withholding. Although Donna Zink threatened Benton County with the imposition of penalties, the court did not hold that Benton County possessed standing only because of the threats.

According to Stevens County, NEWACS filed 243 petitions for involuntary commitment in 2018. NEWACS had filed 149 petitions for involuntary commitment, as of the commencement of the declaratory judgment action. In other words, NEWACS files nearly five petitions per week. Viewing the facts in a light favorable to Stevens County, one would expect that one or more detainees in a rural Eastern Washington county will shortly complain, if one has not already done so, about his or her dispossession of firearms under RCW 71.05.182. This court can also reasonably conclude that, if detainees, in eastern Washington's Second Amendment country, knew that the government violated their gun rights, many would complain.

Several Washington decisions support a conclusion that the record on review supports a conclusion that Stevens County suffers injury in fact. In *Department of Game v. Puyallup Tribe, Inc.*, 70 Wn.2d 245, 422 P.2d 754 (1967), *aff'd*, 391 U.S. 392, 88 S. Ct. 1725, 20 L. Ed. 2d 689 (1968), the Washington Department of Game and Department of Fisheries sued a Native American nation to determine whether state law limiting fishing rights controlled the nation's fishing rights or whether the language of 1854 Treaty of Medicine Creek controlled. Although the Washington Supreme Court addressed ripeness rather than standing, the court held the case to present a justiciable controversy even though the departments had not yet sought any enforcement of its rules against any Native American nations or members of the tribes and the allegations did not state that any tribal member threatened to violate the law.

In *Alim v. City of Seattle*, 14 Wn. App. 2d 838 (2020), two gun owners and two organizations concerned with firearms registration challenged a Seattle Municipal Ordinance that required the storage of firearms in a locked container when not under the control of the owner. The plaintiffs sought a declaration that state law preempted the Seattle ordinance. The superior court dismissed the suit for lack of subject matter jurisdiction and want of a justiciable controversy. The superior court highlighted that neither of the plaintiffs had alleged any intent to violate the ordinance and thus lacked standing. This court reversed. This court held that the plaintiffs satisfied the zone of interest test because of their interest as gun owners in keeping unsecured firearms in their

21

homes. The City of Seattle argued that the plaintiffs failed to show any injury in fact. This court disagreed. The plaintiffs alleged they left their firearms unlocked and unattended in their respective residences. These allegations established an intent to violate the statute and thus injury in fact. The ordinance compelled them to purchase gun safes under threat of civil penalty.

The Stevens County Sheriff's Office and NEWACS, agents of Stevens County, do not wish to enforce RCW 71.05.182. They wish to violate the statute. Since violation of the statute could bring liability, the county and its agents establishes injury in fact.

In *Seattle School District No. 1 v. State*, 90 Wn.2d 476 (1978), the school district, parents of students, and students brought a declaratory judgment action against the State. The plaintiffs alleged that the State's reliance on excess levy funding for discharging its duty to provide for the education of children violated the state constitution. The Supreme Court noted that a judicial determination of constitutional rights was well suited to a declaratory judgment action. Before the Supreme Court, the State argued that the school district, as a mere corporate arm of the State, automatically resulted in the school district possessing the same interests of the State, such that the lack of adversity precluded declaratory relief. The Supreme Court disagreed with this notion. The Supreme Court then emphasized the impact on school districts of schemes to finance the basic operations and maintenance of schools. Stevens County funds the operations of the county sheriff

and the designated crisis responder and pays for involuntary commitments when the committee and his family cannot afford the treatment.

I previously discussed *Washington Association for Substance Abuse and Violence Prevention v. State*, 174 Wn.2d 642 (2012). Initiative opponents filed a declaratory judgment action against the State, challenging the constitutional validity of a voter-approved initiative removing the State from distributing and selling spirits and wine. The Supreme Court held that the association suffered injury in fact although the association suffered no economic loss by reason of the initiative. The increased availability of liquor resulting from the initiative would interfere in the association's goal of preventing substance abuse. Implementation of RCW 71.05.182 interferes in Stevens County's goal of lawfully enforcing the law and preserving gun rights.

In *Pierce County Office of Involuntary Commitment v. Western State Hospital*, 97 Wn.2d 264, 644 P.2d 131 (1982), the superior court granted writs of mandamus in favor of Pierce and King Counties and issued to Western State Hospital and the Department of Social and Health Services (DSHS), requiring the hospital to accept for evaluation persons presented to the hospital by mental health professionals. On appeal, DSHS challenged the standing of the counties. The court rejected the government's challenge because of the counties' duty to provide for the welfare of their citizens.

I also previously analyzed *Snohomish County Board of Equalization v. Department of Revenue*, 80 Wn.2d 262 (1972) when discussing a zone of interest. A

county board of equalization and county assessor sought a declaratory judgment adjudicating a property tax equalization state law as violative of the state constitution. The Supreme Court, although not mentioning whether it addressed injury in fact or zone of interest, held that the county entities held standing because, without a decision of the court, they were placed in a position of making a determination of a difficult question of constitutional law with the possibility of facing both civil and criminal penalties if they made the wrong choice. The declaratory judgment act was particularly designed to give relief in such situations. Stevens County and its agents face civil liability if someone renders the wrong choice with regard to implementation of RCW 71.05.182.

In *Whatcom County v. State*, 99 Wn. App. 237 (2000), the county brought suit against the State for a declaration that the State must defend and indemnify a deputy prosecuting attorney sued because of work performed while prosecuting a case. The court ruled that, since the prosecuting attorney acted as an agent of the State when prosecuting the case, the State must defend and indemnify the attorney. More importantly, this court rejected the State's contention that Whatcom County lacked standing to sue. The court reasoned that, in the event the State refused to defend and indemnify the prosecuting attorney, the county would be forced to do so. So the need to indemnify an actor creates injury in fact.

In addition to Stevens County confronting tort liability for a civil rights violation if the sheriff's department and NEWACS enforce RCW 71.05.182, Stevens County faces

24

potential legal responsibility if either entity fails to follow RCW 71.05.182 out of concern

for the constitutionality of the statute. A detainee, from whom the sheriff does not

confiscate a firearm, could later harm someone by use of the weapon and the injury could

lead to a legal claim. The injured party would sue for the release of a dangerous detainee

without the sheriff confiscating the releasee's guns. So, Stevens County and its

administrative agency and law enforcement department face peril regardless of which

option is chosen.

Remember that RCW 7.24.020 confers standing on any person "whose rights,

status or other legal relations are affected by a statute." RCW 71.05.182 impacts Stevens

County's rights, status and legal relations such that the county holds the right to sue.

I recognize that any public agency, government entity, private agency, public

official, peace officer, or private professional enjoys immunity from liability arising from

the enforcement of the involuntary treatment act, but this immunity only extends to acts

performed in good faith and without gross negligence. RCW 71.05.120. In addition to

immunity afforded Stevens County being restricted, the State does not contend that such

immunity abrogates any standing held by the county.

I further recognize that *Kitsap County v. City of Bremerton*, 46 Wn.2d 362, 281

P.2d 841 (1955), contains brutal language about a Washington municipality's, including a

county's, standing. The ruling suggests that a county is merely a branch of the state

government and lacks standing to challenge state legislation. I must conclude, however,

that the Supreme Court has impliedly overruled *Kitsap County v. City of Bremerton* with later decisions in *Grant County Fire Protection District No. 5 v. City of Moses Lake*, 150 Wn.2d 791 (2004); *City of Seattle v. State*, 103 Wn.2d 663, 694 P.2d 641 (1985); *Pierce County Office of Involuntary Commitment v. Western State Hospital*, 97 Wn.2d 264 (1982); *Seattle School District No. 1 v. State*, 90 Wn.2d 476 (1978); *Snohomish County Board of Equalization v. Department of Revenue*, 80 Wn.2d 262 (1972); *City of Sequim v. Malkasian*, 119 Wn. App. 654, 79 P.3d 24 (2003); *Whatcom County v. State*, 99 Wn. App. 237 (2000).

In *Seattle School District No. 1 v. State*, 90 Wn.2d 476 (1978), the school district, parents of students, and students brought a declaratory judgment action against the State. The plaintiffs alleged that the State's reliance on excess levy funding for discharging its duty to provide for the education of children violated the state constitution. Before the Supreme Court, the State argued that the school district, as a mere corporate arm of the State, automatically resulted in the school district possessing the same interests of the State, such that the lack of adversity precluded declaratory relief. The Supreme Court disagreed.

I question whether the Stevens County Sheriff's Office constitutes a legal entity separate from Stevens County. Regardless, Stevens County would advance its cause by the sheriff's department and NEWACS being realigned as plaintiffs and the State of Washington being named as the defendant. Although I would rule that Stevens County

26

itself possesses standing, such a realignment would advance the argument that at least one plaintiff holds standing.

### 3. Representational Standing

Stevens County also seeks to enforce the rights of detainees that reside within the county. The county argues that, based on its status as a government entity serving the detainees within its jurisdiction, it possesses representation standing. Therefore, it need not show its interests lie within the statute's zone of interests or that it suffers injury. I agree.

In addition to personal standing, the Washington Supreme Court has recognized that a party may possess standing in a representative capacity. *Grant County Fire Protection District No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 803 (2004). An interest in the subject matter of the litigation sufficient to confer standing may be established either in a personal or representative capacity. *Vovos v. Grant*, 87 Wn.2d 697, 700 (1976). Municipalities acting on behalf of their residents hold standing to raise constitutional issues. *Grant County Fire Protection District No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 803 (2004); *City of Seattle v. State*, 103 Wn.2d 663, 669 (1985).

In *Vovos v. Grant*, 87 Wn.2d 697 (1976), the Washington Supreme Court allowed a public defender to raise an issue of public importance to juveniles who would have difficulty vindicating their rights on their own. An order of the juvenile court of Spokane County Superior Court permitted law enforcement agencies to fingerprint and photograph

27

juveniles arrested for certain enumerated crimes without obtaining advance consent from the juvenile court. After granting defense counsel standing, the court declared the juvenile court order unconstitutional.

In *Seattle School District No. 1 v. State*, 90 Wn.2d 476 (1978), the high court ruled that a school district held representational standing on behalf of its students. The court ordered the State to fully fund basic education.

In *City of Seattle v. State*, 103 Wn.2d 663 (1985), the city of Seattle challenged the constitutionality, on the basis of the equal protection clause and the basis of special legislation, of two statutes governing annexation of territory by municipalities. The superior court dismissed the declaratory judgment action for lack of standing in the city because a city has no equal protection rights. On appeal, the State argued that, not only did the city lack standing to assert challenges based on the equal protection clause, but also because of its status as a political subdivision of the State. Because of its status as a political subdivision, the State contended, Seattle could not gain an adversary relationship to the State.

On appeal to the state high court, the Supreme Court, in *City of Seattle v. State*, held that Seattle possessed standing to pursue a claim under the constitutional prohibition against special legislation. More importantly for Stevens County's appeal, the Supreme Court held that Seattle, despite not having any rights under the equal protection clause, possessed representational standing to assert the equal protection rights of its citizens.

28

The legislation impacted the fairness to Seattle residents and constitutionality of the process annexation.

Although not directly on point, in *Town of Ruston v. City of Tacoma*, 90 Wn. App. 75, 951 P.2d 805 (1998), the town of Ruston brought a declaratory judgment action against the city of Tacoma to determine the two adjoining cities' boundary. Tacoma claimed that Ruston failed to join all necessary parties and suggested that Ruston join the people of Ruston and the people of Tacoma to the action. This court disagreed because the two municipalities represented the interests of their respective citizens.

Detainees under the involuntary treatment act are particularly a vulnerable group, whose psychological disturbances preclude them from challenging unconstitutional legislation that impacts their rights. Like the juveniles, in *Volvos v. Grant*, the detainees need assistance in asserting their rights. RCW 71.05.182 impacts the constitutional rights of Stevens County residents and impacts fairness to them under the due process clause. The additional factors command representational standing in favor of Stevens County.

The State of Washington argues that Stevens County cannot assert the rights of its county citizens because third party standing is available only when the injured party is unable to protect his or her own interest. The State cites *Ludwig v. Department of Retirement Systems*, 131 Wn. App. 379, 127 P.3d 781 (2006) for this proposition. But *Ludwig* involves a private person, not a government entity, seeking to enforce another's

rights.  Regardless, involuntary mental health detainees qualify for being unable to protect their interests.

The State of Washington also argues that any injuries to Stevens County residents are hypothetical.  The State underscores that no Stevens County detainee has complained about the statute.  In *Vovos v. Grant*, 87 Wn.2d 697 (1976), *City of Seattle v. State*, 103 Wn.2d 663 (1985), and *Town of Ruston v. City of Tacoma*, 90 Wn. App. 75 (1998), the high court granted the municipal corporations standing despite none of the municipalities asserting that any of its citizens had complained about the legislation being challenged.

### B.  Adversity

Washington State claims defendants Stevens County Sheriff's Office and NEWACS lack any interest adverse to plaintiff Stevens County.  In turn, the State argues that it being served with process and its intervention in the case does not cure the defect of lack of opposing interests.  The State cites *DiNino v. State ex rel. Gorton*, 102 Wn.2d 327, 684 P.2d 1297 (1984) to support its position.

I agree with the State and the majority that Stevens County did not initiate its action against named parties that possess opposing interests.  The Stevens County Sheriff's Office may not even be a separate legal entity from Stevens County.  The sheriff's department and NEWACS have always taken the same legal positions as plaintiff Stevens County.  The two defendants have not opposed any orders sought by the

30

county. I conclude, however, that service on the Washington State Attorney General introduced an adversarial party to this suit.

The plaintiff and defendant must possess conflicting interests in order to establish justiciability. *Acme Finance Co. v. Huse*, 192 Wash. 96, 104 (1937). The action must be adversary in character and involve a present and actual, as distinguished from a possible or potential, controversy between the parties. *De Cano v. State*, 7 Wn.2d 613, 616, 110 P.2d 627 (1941); *State v. Fruitland Irrigation District*, 196 Wash. 11, 13, 81 P.2d 844 (1938). The plaintiff may not erect and sue a straw person defendant who it can easily knock over. *City of Sequim v. Malkasian*, 119 Wn. App. 654, 661 (2003). In turn, the parties cannot stipulate that a justiciable controversy exists so as to clothe the court with jurisdiction. *Adams v. City of Walla Walla*, 196 Wash. 268, 271, 82 P.2d 584 (1938).

To repeat, RCW 7.24.110 reads in part:

> [I]f the statute, ordinance or franchise is alleged to be unconstitutional, the attorney general shall also be served with a copy of the proceeding and be entitled to be heard.

The State possesses an interest in the constitutionality of its statutes as they affect the public welfare. *Clark v. Seiber*, 49 Wn.2d 502, 503, 304 P.2d 708 (1956). The attorney general's duties include defending the constitutionality of legislative enactments. *Farris v. Munro*, 99 Wn.2d 326 (1983). RCW 7.24.110 serves to protect the public should the parties to the declaratory judgment be indifferent in the result. *Clark v. Seiber*, 49 Wn.2d 502, 503 (1956). This principle would never be fulfilled unless serving the Attorney

31

General's Office, when other defendants lack an opposing interest, satisfies the requisite of adversity.

I return to *Alim v. City of Seattle*, 14 Wn. App. 2d 838 (2020), wherein two gun owners and two organizations concerned with firearms registration challenged a Seattle Municipal Ordinance that required the storage of firearms in a locked container when not under the control of the owner. This court held the suit to present a justiciable controversy because the plaintiffs sued an adverse party, the city of Seattle, the government entity that adopted the ordinance.

Stevens County sent an invitation to and warmly welcomed the State of Washington into its declaratory judgment action. The State of Washington intervened with court permission.

Contrary to the State's perception, *DiNino v. State ex rel. Gorton*, 102 Wn.2d 327 (1984) does not advance its cause. In *DiNino*, Joann DiNino brought action under Washington's declaratory judgment act and requested a declaration that her directive under the Natural Death Act (NDA), chapter 70.122 RCW, was valid and enforceable and excused physicians from liability for following it in the event she became both terminally ill and pregnant. Contrary to the NDA, DiNino's directive instructed physicians to terminate her life on her becoming terminally ill even if she was pregnant at the time. The trial court granted DiNino partial summary judgment and declared the pregnancy provision of the NDA unconstitutional because it interfered in a woman's right to make

32

reproductive decisions, but denied a declaration of the validity of DiNino's directive because DiNino may become terminally ill at the late stages of a pregnancy when the State held a legitimate interest to protect the life of the fetus. On review, the Supreme Court held that the case did not present a justiciable controversy because of an absence of a present factual controversy when DiNino was neither terminally ill nor pregnant. Thus, the high court principally grounded its decision on ripeness, not a lack of adversity.

On appeal to the Supreme Court, in *DiNino v. State ex rel. Gorton*, the State conceded Joann DiNino's position that during the early trimesters the NDA could not interfere in DiNino's right to terminate her life and her pregnancy. The State agreed that a woman could draft an abortion provision in her directive or simply delete the pregnancy provision from the model directive. The Supreme Court held that the State's concession eliminated the State as a party with an opposing interest. The State no longer argued any position divergent with DiNino's contentions.

Contrary to the State's action in *DiNino v. State ex rel. Gorton*, the State of Washington has never conceded the unconstitutionality of RCW 71.05.182. Instead, the State has uncompromisingly promoted the constitutionality of the statute in this declaratory judgment action. Stevens County and the State of Washington remain in opposing camps.

A foreign decision of relevance is *Louisiana Independent Auto Dealers Association v. State*, 295 So.2d 796 (La. 1974). The plaintiffs were an unincorporated

association of used automobile dealers and two individual members of the association.

They brought action for a declaratory judgment to test the constitutionality of a provision

of the Louisiana Consumer Credit Law, Article 1880, that regulated motor vehicle credit

transactions. The plaintiffs joined the State of Louisiana as a defendant with service on

the attorney general, as provided by Louisiana statute. The trial court declared the statute

unconstitutional.

On appeal, in *Louisiana Independent Auto Dealers Association v. State*, the State

of Louisiana first argued that the plaintiffs lacked any right of action to obtain declaratory

relief. Under a state statute, the claimant needed to have served the state Attorney

General with a copy of the proceeding and the attorney general was entitled to be heard in

an action involving the constitutionality of a state statute. Article 1880 read similarly to

RCW 7.24.110. The Louisiana statute declared, in part:

> the attorney general of the state shall also be served with a copy of
> the proceeding and be entitled to be heard.

LA. CODE CIV. PROC. art. 1880. On appeal, the State argued that the action lacked true

adversity of interest between the parties. The Supreme Court disagreed. A statute

authorized the attorney general to institute, maintain, and defend actions in which the

State is interested. In turn, Article 1880 designated the state attorney general as the agent

to serve and the agent to present the State's case when a declaratory judgment action

challenged a state statute. The court emphasized that it must construe the declaratory judgment act liberally and that both parties would benefit from a court ruling.

The State's argument that Stevens County's declaratory judgment action lacks adversity ignores the State's intervention into the suit. Generally, an intervenor is treated as an original party to an action. *In re Dependency of J.W.H.*, 106 Wn. App. 714, 723, 24 P.3d 1105 (2001), *rev'd on other grounds*, 147 Wn.2d 687, 57 P.3d 266 (2002); 3A LEWIS H. ORLAND & KARL B. TEGLAND, *Washington Practice: Rules Practice* CR 24 author's cmts. at 612 (4th ed. 1992). An intervening party has the right to participate in the principal action to the same extent as the original parties. *Dumas v. Gagner*, 137 Wn.2d 268, 295 n.98, 971 P.2d 17 (1999); *Goodwin v. Castleton*, 19 Wn.2d 748, 765, 144 P.2d 725(1944); *In re Custody of C.C.M.*, 149 Wn. App. 184, 198, 202 P.3d 971 (2009). To gain intervention, the State of Washington contended that it possessed an interest in this suit such that the superior court must join the State as a party. The State's current position denying the lack of adversity contradicts the State's assertion when moving to intervene.

Stevens County may have improved its argument of adversity by actually naming the State of Washington or the Washington Attorney General's Office as a defendant. Nevertheless, the law does not require that the adverse party be named in the caption of the lawsuit. Once the trial court granted the State of Washington's motion to intervene, the State should have added its name to the caption as intervenor defendant. The State

filed an answer and affirmative defenses and should not have done so if it was not a party

to this declaratory judgment action.

## *C. Ripeness*

Finally, the State of Washington underscores that the complaint for declaratory

judgment fails to allege that the Stevens County Sheriff's Department or NEWACS has

ever enforced the statute. For this reason, the State contends the lawsuit is not ripe. This

ripeness argument overlaps the State's contention that Stevens County, its agents, and

county residents lack any injury in fact.

Stevens County responds that the lawsuit is ripe because RCW 71.05.182 has gone

into effect. According to the county, the Stevens County Sheriff's Department must

enforce the statute, and NEWACS must administer the statute, despite both entities

deeming the statute unconstitutional. As the supervisor of the sheriff and NEWACS, the

county needs a prompt resolution of the constitutionality of RCW 71.05.182. Also, if the

Sheriff's Department and NEWACS enforce the unconstitutional statute, the county will

immediately face tort liability to the detainees, who suffer gun rights deprivation.

When assessing the ripeness of a declaratory judgment action, we consider if the

plaintiff raises issues primarily legal and do not require further factual development.

*Alim v. City of Seattle*, 14 Wn. App. 2d 838, 856 (2020). Declaratory judgment actions

are proper to determine the facial validity of an enactment as distinguished from its

application or administration. *Bainbridge Citizens United v. Department of Natural*

*Resources*, 147 Wn. App. 365, 374, 198 P.3d 1033 (2008).  When the claimant limits its declaratory judgment action to a challenge to an ordinance or statute and the action needs no resolution of facts, the suit is ripe for purposes of court review.  *Grandmaster Sheng-Yen Lu v. King County*, 110 Wn. App. 92, 107, 38 P.3d 1040 (2002).  These principles alone compel a conclusion that Stevens County's suit is ripe and justiciable.

Stevens County objects to the facial validity of RCW 71.05.182, not to the statute's invalidity as applied to particular instances in Stevens County.  Therefore, the lawsuit needs no further factual exploration.

The State emphasizes that no involuntary treatment act detainee has sued Stevens County.  Nevertheless, the lack of a pending suit does not destroy justiciability.  An exposure to liability alone suffices for ripeness.  *Alim v. City of Seattle*, 14 Wn. App. 2d 838, 856 (2020).  When considering ripeness, we also consider the hardship to the parties of withholding court consideration of the dispute.  *Jafar v. Webb*, 177 Wn.2d 520, 525 (2013).

The teachings of Washington decisions do not require actual instances of enforcement of the challenged statute or a threat of a lawsuit.  The test for ripeness for the prosecution of a declaratory judgment action is not whether a party intends to violate the law being challenged but merely whether the statute adversely affects its rights.  *Alim v. City of Seattle*, 14 Wn. App. 2d 838, 853 (2020).  One need not confess to a violation of the ordinance and risk exposure to infractions before challenging the validity of the law.

37

*Alim v. City of Seattle*, 14 Wn. App. 2d 838, 854-55 (2020). The governing entity need not threaten to enforce the law before a real dispute arises such that a justiciable controversy exists. *Clallam County Deputy Sheriff's Guild v. Board of Clallam County Commissioners*, 92 Wn.2d 844, 848 (1979). Washington's declaratory judgment act even allows Washington courts to declare an act of the legislature unconstitutional before the measure becomes effective. *Acme Finance Co. v. Huse*, 192 Wash. 96, 101 (1937). Although these principles arise from a private citizen suing the government, the same reasoning behind the rules should apply to a suit brought by a government entity who the statute directs to enforce the law.

In *Acme Finance Co. v. Huse*, 192 Wash. 96 (1937), a finance company brought suit to challenge legislation that imposed restrictions on loans. Acme Finance joined as defendants the attorney general and the state officer charged with collecting a tax under the legislation. The Supreme Court entertained the declaratory judgment action even before the legislation became effective. The court noted that Acme Finance faced the options of obeying the legislation and thereby potentially suffering the deprivation of its constitutional rights or disobeying the legislation and facing criminal penalties if it did not first seek adjudication of the constitutionality of the act. The legislature designed the declaratory judgment act to afford relief to parties caught in such dilemmas.

Once again, I return to *Alim v. City of Seattle*, 14 Wn. App. 2d 838 (2020), wherein two gun owners and two organizations concerned with firearms registration

38

challenged a Seattle Municipal Ordinance that required the storage of firearms in a locked container when not under the control of the owner. The city of Seattle contended that the lawsuit was not ripe because the gun owners had not alleged that they intended to violate the city ordinance. This court answered that the city conflated the requirement of standing with ripeness. The challenge to an adopted ordinance alone satisfied the element of ripeness. The city of Seattle further contended that the plaintiffs had failed to allege any hardship and should have waited to challenge the law if and when the city enforced the ordinance against them. This court rejected the argument because current hardship is not a requirement of ripeness. Exposure to liability suffices for ripeness.

In *Heavens v. King County Rural Library District*, 66 Wn.2d 558 (1965), a taxpayer challenged, under the declaratory judgment act, the constitutionality of a statute that authorized a rural library district to form local improvement districts. Cyril Heavens claimed he possessed standing as a taxpayer, whom the library district would demand pay a special assessment for the local improvement district. The attorney general intervened. On behalf of the State, the attorney general argued that the dispute lacked ripeness unless and until the county approved a special assessment as part of the assessment roll against Heavens' property. Thus, Heavens could wait. The Supreme Court held that the dispute was ripe for review. The court reasoned that Heavens could challenge the legislation because of its adoption. He did not need to wait for a special assessment against his land.

The court metaphorically wrote that demanding Heavens to wait would equate to locking the barn door after the horse is stolen.

In some instances, the government entity tasked with enforcing the law filed the declaratory judgment action. I have already analyzed, in part, *Department of Game v. Puyallup Tribe, Inc.*, 70 Wn.2d 245 (1967), in which the Washington Department of Game and Department of Fisheries sued a Native American nation to determine whether state law limiting fishing rights controlled the nation's fishing rights or whether the language of a treaty controlled. On appeal, the Puyallup Tribe urged that the state departments' suit lacked justiciability because the issue before the court should be raised by Native Americans, in individual criminal actions, who violate the state food fish and game fish conservation laws.

In *Department of Game v. Puyallup Tribe, Inc.*, the Supreme Court held that the dispute was ripe. The court deemed a multiplicity of arrests for violation of fishing regulations, which involve the jailing and detention for considerable periods of Native Americans and consequent hardship to them and their families, an unnecessarily harsh way of determining whether the Native Americans possess immunity from certain fishing regulations. Since the Indians claimed immunity from these regulations under treaties between the United States and various Native American nations, the state departments acted wisely in seeking an interpretation of those treaties and for requesting a delineation of the rights of the members of the different nations under the declaratory judgment act.

Individual involuntary detainees, particularly in view of their mental health and their typical lack of funds, should not be tasked with bringing suits to challenge the purported infringement of their Second Amendment rights. In turn, if this court does not address RCW 71.05.182's validity, Stevens County, NEWACS, and the sheriff's office remain in a quandary as to whether to enforce the statute. This court can reduce the hardship on both the detainees and the county entities by addressing the merits of the declaratory judgment action.

The State of Washington relies on *Adams v. City of Walla Walla*, 196 Wash. 268 (1938), wherein the Evergreen State Supreme Court dismissed a declaratory judgment action brought by Chester Adams, the president of the local trades council. Adams and others challenged a city ordinance that precluded loitering in front of any business establishment. The Supreme Court noted that Adams failed to allege any strike nor any actual enforcement of the city ordinance against any strike. Thus, Adams presented only remote and contingent injury and no justiciable controversy. The ruling in *Adams* conflicts with later rulings of the Supreme Court in *Clallam County Deputy Sheriff's Guild v. Board of Clallam County Commissioners*, 92 Wn.2d 844 (1979); *Department of Game v. Puyallup Tribe, Inc.*, 70 Wn.2d 245 (1967); and *Heavens v. King County Rural Library District*, 66 Wn.2d 558 (1965). The ruling in *Adams* also diverges from the earlier holding in *Acme Finance Co. v. Huse*, 192 Wash. 96 (1937). Regardless, the Stevens County Sheriff's Office and NEWACS continually must enforce the involuntary

41

treatment act such that the presence of RCW 71.05.182 repetitively places the county in jeopardy.

The State of Washington also relies on *Diversified Industries Development Corp. v. Ripley*, 82 Wn.2d 811 (1973). Diversified Industries, the owner and lessor of residential property, initiated a declaratory judgment action against Bruce and Doris Ripley, month-to-month tenants in the residential unit, and their liability insurer. Diversified Industries prayed for an adjudication of potential financial responsibility as between it, its insurer, and the Ripleys, in connection with an accident and injuries occurring on the residential premises to a social guest of the Ripleys, a four-year old minor. Diversified Industries and the Ripleys' respective insurers paid for the minor's medical bills, but Diversified Industries feared potential liability for the pain and suffering of the girl. The minor, however, moved with her parents to Michigan one year later and asserted no claim for injuries. Still, the statute of limitations would not run until the minor reached eighteen years of age. The trial court placed the responsibility of any liability on the Ripleys.

On appeal, in *Diversified Industries Development Corp. v. Ripley*, the Washington Supreme Court reversed the superior court and held that no justiciable controversy existed between the parties such that declaratory relief should not have been granted. The stipulated facts indicated that no claim was imminent or even threatened. The Supreme Court characterized any potential claim of the minor as speculation and

conjecture. The court wrote that, until the child's claim becomes more discernable than an unpredictable contingency, the cause is not ripe for declaratory relief.

*Diversified Industries Development Corp. v. Ripley* readily shows divergent facts. The plaintiff did not challenge the constitutionality of an effective statute. No statute directed a government entity to enforce a statute. No municipal corporation daily implemented a statute that could lead to tort liability.

## II. Procedural Due Process

I finally reach the merits of Stevens County's suit. Stevens County disputes the validity of RCW 71.05.182 under the United States Constitution's Second Amendment and Washington Constitution art. I, sec. 24, both which concern the right to bear arms. Stevens County also challenges the Washington statute under the due process clauses of the United States Constitution's Fourteenth Amendment and Washington Constitution article I, sec. 3. Although the priority of gun rights influences my decision, my dissent can rest solely on due process principles.

Stevens County has presented no *Gunwall* analysis to show that the state due process clause affords greater protection than the United States due process clause. *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986). Washington courts have yet to interpret the state due process clause different from the federal due process clause. *In re Dependency of E.H.*, 191 Wn.2d 872, 887, 427 P.3d 587 (2018) (plurality opinion); *State v. Jordan*, 180 Wn.2d 456, 462, 325 P.3d 181 (2014); *In re Personal Restraint of Rhome*,

172 Wn.2d 654, 665 n.3, 260 P.3d 874 (2011). Therefore, I apply only the due process clause from the Fourteenth Amendment.

Stevens County contends RCW 71.05.182 deprives citizens of due process because the statute permits the confiscation of firearms, thereby violating a fundamental, constitutional right, without any adversarial judicial process. Under the statute, according to the county, if mental health professionals discharge a detainee within one hundred and twenty hours, the law impounds the detainee's firearms without any judicial evaluation of the detainee being a serious risk of harm to others or herself. The statute reads that the initial detention triggers the deprivation of property and liberty rights, not the granting of a later petition of involuntary commitment by a neutral judge.

Stevens County highlights that, while the alleged mentally ill person remains in detention, he or she will have no access to firearms. The deprivation of rights occurs on the discharge of the detainee. On the release, the detainee forfeits her rights for six months unless she later successfully petitions a court to restore rights. The postdeprivation process, according to the county, does not save RCW 71.05.182 from constitutional attack.

To better understand the operation of RCW 71.05.182 and to better analyze the statute's constitutionality, I outline the statutory process for involuntary commitment of one who, as the result of a mental illness, purportedly constitutes a serious threat to the safety of himself or others. The involuntary treatment act and amendments thereto,

44

chapter 71.05 RCW, control this process. I quote relevant statutes in ordinal numerical order in an appendix.

For purposes of the commitment of a mentally ill person, the law distinguishes between a nonemergency situation, governed by RCW 71.05.150, and an emergency situation, governed by RCW 71.05.153. An emergency occurs when a mentally ill person creates an "imminent" threat to the safety of himself or others.

In a nonemergency situation, a designated crisis responder may confine, in a mental health facility for the purposes of treatment, one who, as a result of a behavioral health disorder, presents a likelihood of serious harm to herself or others or is gravely disabled. RCW 71.05.150(1). Stevens County's challenge does not concern one who is gravely disabled because RCW 71.05.182 does not terminate a gravely disabled person's right to possess firearms. A "likelihood of serious harm" occurs under one of two scenarios. First, the detainee must pose a substantial risk that: (i) she will inflict substantial harm on her own person, as evidenced by threats or attempts to commit suicide or inflict physical harm to herself; (ii) she will inflict physical harm on another, as evidenced by behavior causing such harm or behavior that placed another person in reasonable fear of sustaining such harm; or (iii) she will inflict physical harm on the property of others, as evidenced by behavior that caused substantial loss or damage to the property of others. Second, the detainee must have threatened the physical safety of another and have a history of one or more violent acts. RCW 71.05.020(36). A "violent

act" means behavior that resulted in homicide, attempted suicide, injury, or substantial loss or damage to property. RCW 71.05.020(59). One has a history of violent acts if he commits one such act in the last ten years. RCW 71.05.020(27).

RCW 71.05.150(4) suggests that the crisis responder, during a nonemergency situation, may initially confine the detainee, with the aid of law enforcement and without any approval from a judge. Nevertheless, the Washington Supreme Court has ruled that, in order to detain a mentally ill person in a nonemergency situation, a magistrate must issue a summons on probable cause that the individual probably presents a substantial likelihood of physical harm to herself or others, that sufficient investigation and documentation supports that probability, and that the mental health professional has exhausted all less restrictive means to commitment. RCW 71.05.150(2)(a); *In re Detention of Harris*, 98 Wn.2d 276, 654 P.2d 109 (1982). The potential detainee receives no notice of the application for the summons.

Before filing any petition for involuntary commitment in a nonemergent situation, the crisis responder must interview or attempt to interview the potential detainee and determine whether the individual will submit to voluntary treatment at a facility. RCW 71.05.150(1). Assuming a hospital emergency room referred the detainee to the crisis responder, the responder must consult with any examining emergency room physician regarding the physician's observations and opinions relating to the person's condition, and whether, in the view of the physician, detention is appropriate. RCW 71.05.154.

46

In an emergency situation, the designated crisis responder or a law enforcement officer may hold, in a treatment facility, without any order or judicial review, one who presents an "imminent" likelihood of serious harm or is in "imminent" danger because of a grave disability. RCW 71.05.153(1). Before holding the detainee, the crisis responder must investigate and evaluate facts alleged by others and the credibility of persons providing information.

If the law enforcement officer or designated crisis responder wishes to detain the mentally ill individual for more than twelve hours during an emergent involuntary commitment, a mental health professional must evaluate the detainee. RCW 71.05.153(3)(4). In turn, the responder or officer must reassess the detainee and conclude that the detainee meets detention criteria. RCW 71.05.153(3)(4).

Some of the statutory processes apply regardless of whether or not the facts show an emergency. If the crisis responder detains the individual beyond twelve hours, the designated crisis responder must file a petition for detention and serve the detainee's designated attorney with the petition. RCW 71.05.160(2). The petition must state the circumstances under which the crisis responder learned of the person's condition and declare that evidence, based on the responder's personal observation or investigation, supports a finding that the actions of the detainee constitute a likelihood of serious harm. RCW 71.05.160(1). One physician, physician assistant, or advanced registered nurse practitioner and one mental health professional must examine and evaluate the detainee

within twenty-four hours of the commitment. RCW 71.05.210(1). Note, however, that the responder need not procure an immediate hearing on the petition.

If the detention facility wishes to hold the detainee for more than one hundred and twenty hours, the facility must schedule a probable cause hearing. RCW 71.05.153(1); RCW 71.05.170; RCW 71.05.180; RCW 71.05.240(1). The one hundred twenty hours does not include time during the weekend or a holiday, such that the one hundred twenty hour period equates to one week or eight days if a holiday intervenes. RCW 71.05.180. Detainment on an emergency basis for less than one hundred and twenty hours requires no judicial oversight. *In re Detention of Johnson*, 179 Wn. App. 579, 587, 322 P.3d 22 (2014). The detainee and her attorney, for a lengthy commitment under RCW 71.05.240 and .320, may appear at the probable cause hearing, cross-examine witnesses, and argue against continued detainment.

I end my outline of the process of involuntary commitment with the probable cause hearing to hold the detainee beyond one week, because RCW 71.05.182 does not apply to one held one hundred and twenty hours or more. A person, eventually involuntary committed under RCW 71.05.320 after the one week period, will also forfeit rights to firearm possession, but only after a judicial hearing. RCW 9.41.047(1).

Of course, during the involuntary commitment process and before the end of the one hundred and twenty hour period, the crisis responder or the mental health facility may release the detainee because the court, mental health professionals, or health care

48

providers determine the detainee never posed a likely risk of serious injury or no longer

likely poses such risk. This release within one hundred twenty hours finally brings me to

RCW 71.05.182, the principal statute about which appellant Stevens County complains.

Because of its importance to this appeal, I quote the statute at length:

> (1) A person who *under RCW 71.05.150 or 71.05.153* has been detained at a facility for a period of not more than one hundred twenty hours for the purpose of evaluation and treatment on the grounds that *the person presents a likelihood of serious harm*, *but who has not been subsequently committed* for involuntary treatment under RCW 71.05.240, *may not have in his or her possession or control any firearm* for a period of six months after the date that the person is detained.
> (2) Before the discharge of [such] person . . . , the designated crisis responder shall inform the person orally and in writing that:
> (a) He or she is prohibited from possessing or controlling any firearm for a period of six months;
> (b) *He or she must immediately surrender, for the six-month period, any concealed pistol license and any firearms that the person possesses or controls to the sheriff* of the county or the chief of police of the municipality in which the person is domiciled;
> (c) After the six-month suspension, the person's right to control or possess any firearm or concealed pistol license shall be automatically restored, absent further restrictions imposed by other law; and
> (d) Upon discharge, the person may petition the superior court to have his or her right to possess a firearm restored before the six-month suspension period has elapsed by following the procedures provided in RCW 9.41.047(3).
> (3) *The designated crisis responder shall notify the sheriff* of the county or the chief of police of the municipality in which the person is domiciled *of the six-month suspension*.

(Emphasis added.)

Under RCW 71.05.182, when the treatment facility releases a person temporarily

committed or held for less than one hundred and twenty hours under either RCW

49

71.05.150 or RCW 71.05.153, the detainee may not possess or control any firearm for six months. The detainee forfeits her right to bear arms even if a court, under RCW 71.05.150, finds a lack of probable cause that the person presents a likelihood of serious harm or even if the mental health facility releases the detainee within one week because of the lack of evidence of a likelihood of committing serious harm.

On release of the detainee, the designated crisis responder must inform the detainee of his disability to possess a gun and instruct the detainee to deliver all guns to the county sheriff. The designated crisis responder must inform the sheriff of the releasee's proscription against possessing a firearm. The sheriff, under other statutory provisions, may confiscate the guns.

Subsection (2)(d) of RCW 71.05.182, the challenged statute, allows the released detainee to petition the court for restoration of gun rights pursuant to RCW 9.41.047. The latter statute declares, in part:

> (3)(a) A person who is prohibited from possessing a firearm, by reason of having been . . . detained under RCW 71.05.150 or 71.05.153 . . . may, upon discharge, petition the superior court to have his or her right to possess a firearm restored.
> (b) The petition must be brought in the superior court that ordered the involuntary commitment or . . . or the superior court of the county in which the petitioner resides.
> (c) Except as provided in (d) and (e) of this subsection, the court shall restore the petitioner's right to possess a firearm if the petitioner proves by a preponderance of the evidence that:
> (i) The petitioner is no longer required to participate in court-ordered inpatient or outpatient treatment;

50

(ii) The petitioner has successfully managed the condition related to the commitment or detention or incompetency;

(iii) The petitioner no longer presents a substantial danger to himself or herself, or the public; and

(iv) The symptoms related to the commitment or detention or incompetency are not reasonably likely to recur.

(d) If a preponderance of the evidence in the record supports a finding that the person petitioning the court has engaged in violence and that it is more likely than not that the person will engage in violence after his or her right to possess a firearm is restored, the person shall bear the burden of proving by clear, cogent, and convincing evidence that he or she does not present a substantial danger to the safety of others.

(e) If the petitioner seeks restoration after having been detained under RCW 71.05.150 or 71.05.153, the state shall bear the burden of proof to show, by a preponderance of the evidence, that the petitioner does not meet the restoration criteria in (c) of this subsection.

Under RCW 9.41.047(3), the involuntarily detainee in a mental health facility may later apply to regain his gun rights, but the detainee must initiate the petition. The State, at no time, need file a petition or seek court approval of the annulment of a detainee's or a releasee's right to possess firearms.

RCW 71.05.182's failure to require a decision from a neutral magistrate, after notice and an opportunity to be heard by the detainee, destroys the constitutionality of the statute based on due process grounds. The United States Constitution guarantees that federal and state governments will not deprive an individual of "life, liberty, or property, without due process of law." U.S. Const. amends. V & XIV, § 1. Firearms are not just property, they are also tools to preserve life, liberty, and property. The State does not contest that one holds a protected interest in the right to bear arms.

51

When a state seeks to deprive a person of a protected interest, procedural due process requires that an individual receive notice of the deprivation and an opportunity to be heard to guard against erroneous deprivation. *Mathews v. Eldridge*, 424 U.S. 319, 348, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); *Olympic Forest Products, Inc. v. Chaussee Corp.*, 82 Wn.2d 418, 422, 511 P.2d 1002 (1973). The opportunity to be heard must be at a meaningful time and in a meaningful manner appropriate to the case. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Procedural due process does not seek to promote efficiency, but to protect the interests of the person whose property the government seeks to seize. *Olympic Forest Products, Inc. v. Chaussee Corp.*, 82 Wn.2d 418, 433 (1973).

In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the United States Supreme Court announced a three-factor test to employ when assessing what steps due process demands in discrete circumstances. Since this proclamation, all state and federal courts have ritually applied the three-prong test. To determine what procedures the constitution requires in a particular case, a court, according to the *Mathews* test, must consider: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and third, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v.*

52

*Eldridge*, 424 U.S. 319, 335 (1976). The United States Supreme Court has never explained how to apply and weigh these factors.

Because the Supreme Court implanted a convoluted mouthful into each of the three due process factors, I dismember the *Mathews* test into ten steps, stairs, or rungs. First, the claimant must identify his or her interest impacted by the government. Second, the claimant must assess the importance of this private interest. Third, the claimant must identify the process actually received. Fourth, the claimant must isolate the risk inherent in the process received. Fifth, the claimant must pinpoint the process he or she deems due. Sixth, the claimant must explain why the substitute procedures will reduce the risk of an erroneous deprivation. Seventh, the claimant or the government must identify the government's interest behind the deprivation of the private interest. Eighth, the claimant or the government must appraise the importance of the government's interest. Ninth, the government must calculate or divulge the financial and other burdens imposed by the claimant's suggested procedures. Tenth, the court must weigh the private interest against the government interest in the context of the risk of an erroneous deprivation of the private interest based on the actual and suggested procedures. I later review these ten steps in the context of RCW 71.05.182, the challenged statute.

Although Stevens County complains about loss of gun rights after release from involuntary commitment, rules controlling the commitment supply additional reasons to declare RCW 71.05.182 unconstitutional. Due process guaranties must accompany

involuntary commitment for mental disorders.  *Addington v. Texas*, 441 U.S. 418, 99 S.

Ct. 1804, 60 L. Ed. 2d 323 (1979); *In re Detention of Harris*, 98 Wn.2d 276, 279 (1982);

*In re Levias*, 83 Wn.2d 253, 517 P.2d 588 (1973), *overruled by In re Detention of*

*McLaughlin*, 100 Wn.2d 832, 676 P.2d 444 (1984).

The State has a continuing interest in confining those who present a substantial

risk of serious physical harm to themselves or others.  *In re Detention of Harris*, 98

Wn.2d 276, 284 (1982).  Nevertheless, although mental health professionals might deem

commitment to benefit the detainee, sometimes commitment causes more harm.  *In re*

*Detention of Harris*, 98 Wn.2d 276, 279 (1982).  Also, the prediction of dangerousness

has its attendant problems.  *In re Detention of Harris*, 98 Wn.2d 276, 279 (1982).  The

American Psychiatric Association has in another context confessed the profession's

inability to predict dangerousness precisely.  *In re Detention of Harris*, 98 Wn.2d 276,

281 (1982), citing Coleman, "*You'll Thank us Later": Rationalizing Civil Commitment of*

*the Mentally Disordered*, 4 Hamline L. Rev. 425, 432 (1981).  Mental disease does not in

itself predict dangerousness.  *In re Detention of Harris*, 98 Wn.2d 276, 279 (1982).  For

this reason, involuntary commitment should not automatically lead to forfeiture of the

right to bear firearms.

The laws of involuntary civil commitment should not reflect irrational fears of

mental illness.  *In re Detention of Harris*, 98 Wn.2d 276, 279 (1982).  This court should

protect against abuse of the commitment process by requiring demonstration of a

substantial risk of danger and by imposing procedural safeguards and a heavy burden of proof before involuntarily committing someone. *In re Detention of Harris*, 98 Wn.2d 276, 279 (1982); *In re Levias*, 83 Wn.2d 253 (1973). This protection by the court should extend to government confiscation of firearms, which afford many the ability to defend oneself.

The Washington Supreme Court, in *In re Detention of Harris*, 98 Wn.2d 276 (1982), ruled that, before a summons may issue for involuntary commitment in nonemergency circumstances, due process requires, as a function of inherent judicial power, a judicial finding of "'probable dangerousness.'" *In re Detention of Harris*, 98 Wn.2d 276, 287 (1982). Although the question raised by Stevens County in this appeal differs, much of the rationale behind the Supreme Court's decision, in *Harris*, supports a ruling that due process demands that a judicial officer must find the detainee likely poses a serious danger to others by the use of a firearm, or at least that the detainee continues to pose a threat of likely serious injury to others. Stated differently, the initial determination by a mental health professional that the detainee should be committed, without any review by a judicial officer as to whether gun rights should be revoked, should not suffice to comply with procedural due process when the State or the court releases the detainee within days and without any contested hearing before a magistrate.

The Washington high court, in *In re Detention of Harris*, raised the legitimate questions: what insight can a judge provide for a determination that is ultimately

55

medical?  During an involuntary commitment proceeding, would a judicial finding of probable dangerousness simply add another administrative burden with little additional protection for the individual since judges will generally defer to the recommendation of the mental health professional?  The court resoundingly answered the second question in the negative.  While a magistrate may not be any better than a mental health professional at predicting whether a person presents a substantial likelihood of physical harm to herself or others, a magistrate plays a critical role in the predetention process.  The potential curtailment of liberty requires the intervention of an impartial third party to ensure not only that probable dangerousness exists, but that the mental health professional conducted a sufficient investigation.  These considerations are uniquely judicial concerns that will reduce abuse within the commitment process.  The court wrote that the power that former RCW 71.05.150 invested in a mental health professional greatly exceeded the need to satisfy the State's interest in nonemergency detention of those who present a likelihood of danger to themselves or others.  *In re Detention of Harris*, 98 Wn.2d at 286-87.

I now address the ten steps extricated from the United States Supreme Court's *Mathews v. Eldrige* three-prong test.  First, the claimant must identify his or her interest impacted by the government.  Stevens County asserts a citizen's private interest of possessing a gun.

56

Second, the challenger must assess the importance of the private interest. The citizen's interest in possessing a firearm rises to a constitutional right under both the United States Constitution and the Washington Constitution. The Second Amendment provides that "[a] well regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend. II. article I, section 24 of the Washington Constitution declares: "The right of the individual citizen to bear arms in defense of himself, or the state, shall not be impaired. . . ." As a right enumerated by the constitution, the right to bear arms is fundamental. *State v. Sieyes*, 168 Wn.2d 276, 287, 225 P.3d 995 (2010). The right is substantial. *State v. Hamdan*, 2003 WI 113, 264 Wis. 2d 433, 480, 665 N.W.2d 785 (2003).

The United States Supreme Court has resolved that the Second Amendment protects an individual's right to keep and bear arms even outside the context of service in a militia. *District of Columbia v. Heller*, 554 U.S. 570, 592, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). The high Court has also applied the Second Amendment to states through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 791, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010).

Although the United States Supreme Court, in *District of Columbia v. Heller*, did not venture to delineate the complete dimensions of the Second Amendment right, the Court qualified its holding when writing that the Second Amendment does not guarantee an unlimited right to "keep and carry any weapon whatsoever in any manner whatsoever

57

and for whatever purpose." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). The Supreme Court wrote that its ruling should not cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill. *District of Columbia v. Heller*, 554 at 626 (2008). The court assumed, without discussion, that the states, as early as the adoption of the federal constitution, prohibited possession of firearms by felons and the mentally ill. Lower federal courts, despite some questioning of the historicity of the high Court's observation, have obediently followed this dicta when a court, after an adversary proceeding, finds the mentally ill to be dangerous. *Mai v. United States*, 952 F.3d 1106, 1113 (9th Cir. 2020); *Tyler v. Hillsdale County Sheriff's Department*, 837 F.3d 678, 687 (6th Cir. 2016); *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010).

The State describes its revocation of the constitutional right to bear arms, under RCW 71.05.182, as temporary or even brief and only after the detainee demonstrated a likelihood of causing serious injury. This contention fails to note that no judicial officer found the detainee to be a danger. Also, the rescission lasts for six months. The State cites no law that characterizes six months as brief and temporary. Nor does the State cite any law that allows the State to temporarily deny one a constitutional right without due process. A temporary deprivation of property is nonetheless a "deprivation" in the terms of the due process clause. *Fuentes v. Shevin*, 407 U.S. 67, 85, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972). The violation of a fundamental constitutional right, even if temporary,

58

constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976).

Other provisions of the United States Constitution Bill or Rights lack priority over the Second Amendment. The First Amendment would not sanction a law that precluded, for six months, criticism of a Court of Appeals judge. The First Amendment would not permit a practice under which the government distributes funds to churches to defray the expense of the Eucharist, if the practice lasted only six months.

In the third stair step, the claimant must identify the process actually received when the government impacted her private interest. In the instance of an emergency involuntary commitment, the law authorizes a mental health professional or a law enforcement officer to confine one who poses an "imminent" likelihood of serious harm. This confinement leads to forfeiture of the right to bear arms. Nevertheless, no Washington statute affords the detainee a judicial process for the involuntary commitment, let alone for the rescission of the right to bear arms. The mental health facility or the State needs a judicial ruling only if it wishes to extend the commitment beyond a week. In the meantime, the facility could release the emergency detainee without any ruling by the court. Thus, the detainee could be detained for less than an hour and found not to be a danger, but, because of RCW 71.05.182, lose his right to possess firearms for a half year.

In the instance of a nonemergency commitment, a court must sign an order of probable cause to detain the individual, but the court finds probable cause rather than entering a finding that the detainee in fact poses the likelihood of serious harm to another. Also, the detainee enjoys no opportunity to be heard at the time the court reviews the State's pleadings seeking probable cause for a nonemergency involuntary commitment. Similarly to an emergent commitment, the detainee could be kept for a week without any adversarial hearing to determine his or her risk of danger. In the meantime, the mental health facility could release the detainee, and the detainee still forfeits her gun rights.

Under the fourth rung of the due process analysis, the challenger must isolate the risk inherent in the process received. *In re Detention of Harris*, 98 Wn.2d 276 (1982) aids in identifying this risk. Although the law relies on mental health professionals to render psychological opinions, the law does not allow mental health professionals to issue judicial decisions. The designated crisis responder and other mental health professionals, similar to a law enforcement officer, wishes to protect society, not necessarily act in the best interest of the mentally ill. As noted by this court, the mental health professional becomes an adversary of the detainee. *In re Detention of T.C.*, 11 Wn. App. 2d 51, 62-63, 450 P.3d 1230 (2019). A judge brings a balance to the proceeding absent when only mental health professionals render decisions. A judge ensures that the mental health professional did not cut corners when investigating and reaching conclusions. Thus, a significant risk of error lies behind the retraction of a

detainee's Second Amendment rights without a judicial determination of need for the forfeiture. Keep in mind that a law enforcement officer, without any medical or mental health training, may also detain, without court process, the allegedly mentally ill individual during a purported emergency. RCW 71.05.153(2)(a).

Under the fifth stair, the claimant must pinpoint the process he or she deems due. Stevens County asks that a magistrate review the need to revoke the detainee's gun rights. Stevens County also asks that no gun rights be revoked unless the detainee receives an evidentiary hearing, during which the detainee, through counsel, may cross-examine the State's witnesses and present argument as to his or her likelihood of seriously harming another.

Under the sixth step, the challenger must explain why the substitute procedures will reduce the risk of an erroneous deprivation. We have already addressed the sixth step when discussing rung four. The suggested process will reduce error. In addition to the review of the case by a neutral judge, the suggested process will afford the ability to examine the State's witnesses, who claim the detainee poses a danger. Cross-examination is "beyond any doubt the greatest legal engine ever invented for the discovery of truth." 3 WIGMORE, EVIDENCE §1367 at 27 (2d ed. 1923). Our Supreme Court has recognized the importance of cross-examination of forensic scientists. *In re Personal Restraint of Stenson*, 174 Wn.2d 474, 489, 276 P.3d 286 (2012).

61

Under the seventh rung, the claimant or the government must identify the government's interest behind the deprivation of the private interest. The State holds an interest in limiting gun violence. *State v. Jorgenson*, 179 Wn.2d 145, 157, 312 P.3d 960 (2013). A state holds an interest in removing a gun from mentally ill individuals, who may use the weapon to seriously injure if not kill another or himself or herself. *United States v. Collins*, 982 F.3d 236, 243 (4th Cir. 2020).

Under the eighth stair, the challenger or the government must appraise the importance of the government's interest. The State holds a compelling interest in restricting potentially dangerous persons from using firearms, including those involuntary committed after a judicial determination, for treatment of a mental disorder. *Morris v. Blaker*, 118 Wn.2d 133, 150-51, 821 P.2d 482 (1992). Nevertheless, the State holds no public safety interest in denying one temporarily detained, but not found a threat to others or himself, of gun rights.

During the ninth step, the government must calculate or divulge the financial and other burdens imposed by the claimant's suggested procedures. In Stevens County's appeal, the State does not contend that the county's proposed procedures will burden it. Obviously the court system is busy, but courts should not use busyness as an excuse to deprive one of constitutional rights. If the State releases the detainee without a hearing on the merits of involuntary commitment, the court, at the request of the State, could still

conduct an emergency hearing to determine if the releasee's gun rights should be revoked.

Under the tenth and final stair, the court must weigh the private interest against the government interest in the context of the risk of an erroneous deprivation of the private interest based on the actual and suggested procedures. After assessing the strong interests held by each side and weighing the nominal burden on the State to conduct a hearing before revoking a detainee's Second Amendment right, I conclude that the provisions of RCW 71.05.182 flunk constitutional scrutiny. No person should lose a constitutional right, particularly one as prominent as the Second Amendment, without an opportunity to be heard before a magistrate. No one should be denied the right to self-defense, with a legal weapon of his or her choice, without a finding by a judicial officer of either the likelihood that the person will use a firearm to harm someone or at least the likelihood that the person poses a likely risk of serious harm to himself or another.

I now catalogue case law cited by the parties that directly or tangentially addresses the constitutional issue on appeal. Federal reviewing courts have upheld the trial court's revocation of a mental health detainee's firearm rights, but only after a judicial determination that the detainee likely endangered himself or others. *United States v. Collins*, 982 F.3d 236 (4th Cir. 2020); *Mai v. United States*, 952 U.S. 1106 (9th Cir. 2020). A Washington detainee receives no such protection from the judicial system.

63

The State contends that our decision in *In re Detention of Johnson*, 179 Wn. App. 579 (2014) controls this appeal. Mental health professionals involuntarily committed June Johnson under the emergency detention statute, RCW 71.05.153. The hospital detained Johnson for an initial seventy-two hours, then petitioned for another fourteen days of involuntary treatment. As I have noted before, RCW 71.05.153 does not provide for judicial review of the initial seventy-two hour, now one hundred and twenty hour, emergency detention. Johnson argued that the statute violated due process because the statute sanctioned her commitment without the opportunity for judicial review of whether she presented an imminent risk of serious harm. This court upheld the commitment and the statute because of the imminent nature of the harm.

Stevens County does not challenge RCW 71.05.153, nor an involuntary commitment without judicial review, in an emergency situation. Stevens County's challenge to RCW 71.05.182 does not entail any emergency situation. Instead, under RCW 71.05.182, the detainee loses a critical constitutional right without any emergency and without a judicial determination that she presents an imminent risk of harm on release from a mental health facility.

In *State v. Jorgenson*, 179 Wn.2d 145 (2013), the Washington Supreme Court, with two dissenters, upheld the constitutionality of RCW 9.41.040(2)(a)(iv), which prohibits firearm possession by someone released on bond after a judge found probable cause that the person committed a serious offense. The Supreme Court emphasized that a

neutral judge had found probable cause. In the instance of RCW 71.05.182, the trial court issues an order of probable cause only in instances of nonemergent circumstances and, even if the trial court finds a lack of probable cause, the detainee still forfeits her gun rights. Just as important, the detainee never has an opportunity to be heard, regardless of the circumstances, at the time of the probable cause hearing under RCW 71.05.150.

In *State v. Karas*, 108 Wn. App. 692, 32 P.3d 1016 (2001), this court upheld gun restrictions imposed on one against whom the court entered a domestic violence protection order. This court emphasized that Robert Karas received notice and a hearing in front of a neutral magistrate before entry of the order.

The decision most analogous is *United States v. Rehlander*, 666 F.3d 45 (1st Cir. 2012). The court refused to read the federal statute criminalizing possession of a weapon by a person "committed" to a mental institution to encompass temporary involuntary commitments attended only by ex parte procedures. The court reasoned that Maine procedures for emergency commitment should not work a loss of a constitutional liberty because of the lack of an adjudicatory hearing wherein the detainee could dispute the State's evidence. A judge's signing of an application before an involuntary commitment did not satisfy due process because of the lack of an adversary proceeding.

The State contends that the procedures afforded under RCW 71.05.182 and RCW 9.41.047 to petition for restoration of Second Amendment rights saves the former statute from constitutional challenge. In some instances, a postdeprivation hearing satisfies due

process. *Parratt v. Taylor*, 451 U.S. 527, 538, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330-31, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). But those instances are rare.

United States Supreme Court precedent requires that individuals must receive notice and an opportunity to be heard before the government deprives them of property. *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48, 114 S. Ct. 492, 126 L. Ed. 2d 490 (1993); *United States v. $8,850,* 461 U.S. 555, 562 n.12, 103 S. Ct. 2005, 76 L. Ed. 2d 143 (1983); *Fuentes v. Shevin,* 407 U.S. 67, 82 (1972). The right to prior notice and a hearing is central to the constitution's command of due process. *United States v. James Daniel Good Real Property*, 510 U.S. 43, 53 (1993). The constitution usually demands a predeprivation hearing, not only to afford abstract fair play to the individual, but to protect the citizen's use and possession of property from arbitrary encroachment and to minimize mistaken deprivations of property. *Fuentes v. Shevin*, 407 U.S. 67, 80-81 (1972).

If the right to notice and a hearing is to serve its full purpose, then it must be granted at a time when the deprivation can be prevented. *Olympic Forest Product, Inc. v. Chaussee Corp.*, 82 Wn.2d 418, 430 (1973). No later hearing can undo the fact that the arbitrary taking that was subject to the right to procedural due process has already occurred. *Olympic Forest Product, Inc. v. Chaussee Corp.*, 82 Wn.2d 418, 430 (1973).

The right to a prior hearing is the only effective safeguard against arbitrary deprivations of property. *Olympic Forest Product, Inc. v. Chaussee Corp.*, 82 Wn.2d 418, 430 (1973).

The United States Supreme Court tolerates a postdeprivation hearing only in extraordinary situations when a predeprivation hearing imposes an undue burden in proportion to the liberty interest at stake or when the State cannot anticipate and prevent a random deprivation of a liberty interest. *Zinermon v. Burch*, 494 U.S. 113, 132, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990); *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S. Ct. 780, 786, 28 L. Ed. 2d 113 (1971). The State of Washington does not assert that either situation exists when it deprives one of the right to bear arms under RCW 71.05.182. In situations when the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation remedy. *Zinermon v. Burch*, 494 U.S. 113, 132 (1990). Any statute allowing postdeprivation review must afford prompt review. *Mackey v. Montrym*, 443 U.S. 1, 13, 99 S. Ct. 2612, 61 L. Ed. 2d 321 (1979).

A citizen's right to possess firearms free from governmental interference constitutes a private interest of historic and continuing importance. The State has not presented any justification for a postdeprivation hearing. The State supplies no reason why a court cannot conduct a hearing before the release of the detainee. Once the mental health facility decides to release the detainee, the facility can delay any release several hours to find a judge to conduct a hearing. Paperwork generally delays the release of a

detainee anyway. If the court determines to release the detainee at the conclusion of one week during a probable cause hearing under RCW 71.05.240, the court can then take evidence and determine whether to revoke gun rights.

Any hearing under RCW 71.05.182 and RCW 9.41.047(3), assuming it occurs before the expiration of the six months, still deprives the former detainee of his right to bear arms for weeks, if not months, during which time the detainee may need the gun for self-defense. During this period, she lacks any ability to defend herself at home or other locations with a firearm. If she returns home with a gun in the closet, she immediately becomes subject to criminal penalties.

RCW 9.41.047(3) grants a hearing no priority in setting. If the State wishes to save the constitutionality of RCW 71.05.182, it must, at the least, require a prompt, if not immediate, hearing on the release of the detainee.

RCW 71.05.182 and RCW 9.41.047(3) do not afford a former detainee the right to counsel at the cost of the State if the detainee cannot afford an attorney, if the detainee seeks to restore his gun rights. The former detainee will likely be unable to navigate the demands of statutes, court rules, and court hearings without assistance of counsel during any attempt to regain his constitutional rights.

RCW 9.41.047(3) imposes no burden on the government to justify the deprivation of an important constitutional right. The government need not show that the former detainee poses a likely risk of serious harm to herself or others, let alone that she will use

a firearm in an offensive manner. Instead, the postdeprivation process, under RCW 9.41.047(3), places the burden on the former detainee to prove he is no longer required to participate in court-ordered inpatient or outpatient treatment, he has successfully managed the condition related to the detention, he no longer presents a substantial danger to himself or the public, and the symptoms related to the detention or incompetency are not reasonably likely to recur. The statute imposes a high, if not impossible, onus on someone who lacks resources to litigate and who cannot afford counsel and the cost of hiring professional witnesses.

I acknowledge that the United States suffers from an epidemic of gun violence, including violence perpetrated by mentally ill persons. The extent of this plague entices me to deny Stevens County's claim. But I would then abdicate my responsibility to protect all constitutional rights, including rights disfavored by some. The due process clause and the Second Amendment denies the State the authority to confiscate firearms of one never adjudicated by a neutral magistrate to present a likelihood of serious harm to oneself or others.

I would declare RCW 71.05.182 unconstitutional.

I Dissent:

_Fearing, J._
Fearing, J.

APPENDIX OF STATUTES

18 U.S.C.A. § 922(g)

(g) It shall be unlawful for any person--
. . . .
(4) who has been adjudicated as a mental defective or who has been committed to a mental institution;
. . . .
to . . . possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

RCW 9.41.047(3)

(3)(a) A person who is prohibited from possessing a firearm, by reason of having been . . . detained under RCW 71.05.150 or 71.05.153 . . . may, upon discharge, petition the superior court to have his or her right to possess a firearm restored.

(b) The petition must be brought in the superior court that ordered the involuntary commitment or . . . or the superior court of the county in which the petitioner resides.

(c) Except as provided in (d) and (e) of this subsection, the court shall restore the petitioner's right to possess a firearm if the petitioner proves by a preponderance of the evidence that:

(i) The petitioner is no longer required to participate in court-ordered inpatient or outpatient treatment;

(ii) The petitioner has successfully managed the condition related to the commitment or detention or incompetency;

(iii) The petitioner no longer presents a substantial danger to himself or herself, or the public; and

(iv) The symptoms related to the commitment or detention or incompetency are not reasonably likely to recur.

(d) If a preponderance of the evidence in the record supports a finding that the person petitioning the court has engaged in violence and that it is more likely than not that the person will engage in violence after his or her right to possess a firearm is restored, the person shall bear the burden of proving by clear, cogent, and convincing evidence that he or she does not present a substantial danger to the safety of others.

(e) If the petitioner seeks restoration after having been detained under RCW 71.05.150 or 71.05.153, the state shall bear the burden of proof to show, by a

preponderance of the evidence, that the petitioner does not meet the restoration criteria in (c) of this subsection.

RCW 71.05.020

The definitions in this section apply throughout this chapter unless the context clearly requires otherwise.
. . . .
(16) "Designated crisis responder" means a mental health professional appointed by the county, by an entity appointed by the county, or by the authority in consultation with a federally recognized Indian tribe or after meeting and conferring with an Indian health care provider, to perform the duties specified in this chapter;
(17) "Detention" or "detain" means the lawful confinement of a person, under the provisions of this chapter;
. . . .
(23) "Evaluation and treatment facility" means any facility which can provide directly, or by direct arrangement with other public or private agencies, emergency evaluation and treatment, outpatient care, and timely and appropriate inpatient care to persons suffering from a mental disorder, and which is licensed or certified as such by the department. . . .
. . . .
(26) "Hearing" means any proceeding conducted in open court that conforms to the requirements of RCW 71.05.820;
(27) "History of one or more violent acts" refers to the period of time ten years prior to the filing of a petition under this chapter, excluding any time spent, but not any violent acts committed, in a behavioral health facility, or in confinement as a result of a criminal conviction;
(28) "Imminent" means the state or condition of being likely to occur at any moment or near at hand, rather than distant or remote;
. . . .
(32) "Judicial commitment" means a commitment by a court pursuant to the provisions of this chapter;
. . . .
(36) "Likelihood of serious harm" means:
(a) A substantial risk that: (i) Physical harm will be inflicted by a person upon his or her own person, as evidenced by threats or attempts to commit suicide or inflict physical harm on oneself; (ii) physical harm will be inflicted by a person upon another, as evidenced by behavior which has caused such harm or which places another person or persons in reasonable fear of sustaining such harm; or (iii) physical harm will be inflicted

by a person upon the property of others, as evidenced by behavior which has caused substantial loss or damage to the property of others; or

(b) The person has threatened the physical safety of another and has a history of one or more violent acts;

(37) "Medical clearance" means a physician or other health care provider has determined that a person is medically stable and ready for referral to the designated crisis responder;

(38) "Mental disorder" means any organic, mental, or emotional impairment which has substantial adverse effects on a person's cognitive or volitional functions;

(39) "Mental health professional" means a psychiatrist, psychologist, physician assistant working with a supervising psychiatrist, psychiatric advanced registered nurse practitioner, psychiatric nurse, or social worker, and such other mental health professionals as may be defined by rules adopted by the secretary pursuant to the provisions of this chapter;

(40) "Peace officer" means a law enforcement official of a public agency or governmental unit, and includes persons specifically given peace officer powers by any state law, local ordinance, or judicial order of appointment;

. . .

(59) "Violent act" means behavior that resulted in homicide, attempted suicide, injury, or substantial loss or damage to property.

RCW 71.05.150

(1) When a designated crisis responder receives information alleging that a person, as a result of a behavioral health disorder, presents a likelihood of serious harm or is gravely disabled, or that a person is in need of assisted outpatient behavioral health treatment; the designated crisis responder may, after investigation and evaluation of the specific facts alleged and of the reliability and credibility of any person providing information to initiate detention or involuntary outpatient treatment, if satisfied that the allegations are true and that the person will not voluntarily seek appropriate treatment, file a petition for initial detention under this section. . . .

. . . .

(2)(a) A superior court judge may issue a warrant to detain a person with a behavioral health disorder to a designated evaluation and treatment facility, a secure withdrawal management and stabilization facility, or an approved substance use disorder treatment program, for a period of not more than one hundred twenty hours for evaluation and treatment upon request of a designated crisis responder, subject to (d) of this subsection, whenever it appears to the satisfaction of the judge that:

(i) There is probable cause to support the petition; and

(ii) The person has refused or failed to accept appropriate evaluation and treatment voluntarily.

. . . .

(4) The designated crisis responder may notify a peace officer to take such person or cause such person to be taken into custody and placed in an evaluation and treatment facility, secure withdrawal management and stabilization facility, or approved substance use disorder treatment program. At the time such person is taken into custody there shall commence to be served on such person, his or her guardian, and conservator, if any, a copy of the original order together with a notice of rights and a petition for initial detention. . . .

## RCW 71.05.153

(1) When a designated crisis responder receives information alleging that a person, as the result of a behavioral health disorder, presents an imminent likelihood of serious harm, or is in *imminent* danger because of being gravely disabled, after investigation and evaluation of the specific facts alleged and of the reliability and credibility of the person or persons providing the information if any, the designated crisis responder may take such person, or cause by oral or written order such person to be taken into emergency custody in an evaluation and treatment facility, secure withdrawal management and stabilization facility if available with adequate space for the person, or approved substance use disorder treatment program if available with adequate space for the person, for not more than one hundred twenty hours as described in RCW 71.05.180.

(2)(a) Subject to (b) of this subsection, a peace officer may take or cause such person to be taken into custody and immediately delivered to a triage facility, crisis stabilization unit, evaluation and treatment facility, secure withdrawal management and stabilization facility, approved substance use disorder treatment program, or the emergency department of a local hospital under the following circumstances:

(i) Pursuant to subsection (1) of this section; or

(ii) When he or she has reasonable cause to believe that such person is suffering from a behavioral health disorder and presents an imminent likelihood of serious harm or is in imminent danger because of being gravely disabled.

. . . .

(3) Persons delivered to a crisis stabilization unit, evaluation and treatment facility, emergency department of a local hospital, triage facility that has elected to operate as an involuntary facility, secure withdrawal management and stabilization facility, or approved substance use disorder treatment program by peace officers pursuant to subsection (2) of this section may be held by the facility for a period of up to twelve hours, not counting time periods prior to medical clearance.

(4) Within three hours after arrival, not counting time periods prior to medical clearance, the person must be examined by a mental health professional or substance use disorder professional. Within twelve hours of notice of the need for evaluation, not counting time periods prior to medical clearance, the designated crisis responder must determine whether the individual meets detention criteria.

RCW 71.05.154

A designated mental health professional conducting an evaluation of a person under RCW 71.05.150 or 71.05.153 must consult with any examining emergency room physician regarding the physician's observations and opinions relating to the person's condition, and whether, in the view of the physician, detention is appropriate. The designated mental health professional shall take serious consideration of observations and opinions by examining emergency room physicians in determining whether detention under this chapter is appropriate. The designated mental health professional must document the consultation with an examining emergency room physician, including the physician's observations or opinions regarding whether detention of the person is appropriate.

RCW 71.05.160

(1) Any facility receiving a person pursuant to RCW 71.05.150 or 71.05.153 shall require the designated crisis responder to prepare a petition for initial detention stating the circumstances under which the person's condition was made known and stating that there is evidence, as a result of his or her personal observation or investigation, that the actions of the person for which application is made constitute a likelihood of serious harm, or that he or she is gravely disabled, and stating the specific facts known to him or her as a result of his or her personal observation or investigation, upon which he or she bases the belief that such person should be detained for the purposes and under the authority of this chapter.

(2)(a) If a person is involuntarily placed in an evaluation and treatment facility, secure withdrawal management and stabilization facility, or approved substance use disorder treatment program pursuant to RCW 71.05.150 or 71.05.153, on the next judicial day following the initial detention, the designated crisis responder shall file with the court and serve the designated attorney of the detained person the petition or supplemental petition for initial detention, proof of service of notice, and a copy of a notice of emergency detention.

74

RCW 71.05.170

Whenever the designated crisis responder petitions for detention of a person whose actions constitute a likelihood of serious harm, or who is gravely disabled, the facility providing one hundred twenty hour evaluation and treatment must immediately accept on a provisional basis the petition and the person. The facility shall then evaluate the person's condition and admit, detain, transfer, or discharge such person in accordance with RCW 71.05.210. The facility shall notify in writing the court and the designated crisis responder of the date and time of the initial detention of each person involuntarily detained in order that a probable cause hearing shall be held no later than one hundred twenty hours after detention.

. . . .

RCW 71.05.180

If the evaluation and treatment facility, secure withdrawal management and stabilization facility, or approved substance use disorder treatment program admits the person, it may detain him or her for evaluation and treatment for a period not to exceed one hundred twenty hours from the time of acceptance as set forth in RCW 71.05.170. The computation of such one hundred twenty hour period shall exclude Saturdays, Sundays and holidays.

RCW 71.05.182

(1) A person who under RCW 71.05.150 or 71.05.153 has been detained at a facility for a period of not more than one hundred twenty hours for the purpose of evaluation and treatment on the grounds that the person presents a likelihood of serious harm, but who has not been subsequently committed for involuntary treatment under RCW 71.05.240, may not have in his or her possession or control any firearm for a period of six months after the date that the person is detained.

(2) Before the discharge of [such] person . . . , the designated crisis responder shall inform the person orally and in writing that:

(a) He or she is prohibited from possessing or controlling any firearm for a period of six months;

(b) He or she must immediately surrender, for the six-month period, any concealed pistol license and any firearms that the person possesses or controls to the sheriff of the county or the chief of police of the municipality in which the person is domiciled;

(c) After the six-month suspension, the person's right to control or possess any firearm or concealed pistol license shall be automatically restored, absent further restrictions imposed by other law; and

(d) Upon discharge, the person may petition the superior court to have his or her right to possess a firearm restored before the six-month suspension period has elapsed by following the procedures provided in RCW 9.41.047(3).

(3) The designated crisis responder shall notify the sheriff of the county or the chief of police of the municipality in which the person is domiciled of the six-month suspension.

. . . .

## RCW 71.05.210

(1) Each person involuntarily detained and accepted or admitted at an evaluation and treatment facility, secure withdrawal management and stabilization facility, or approved substance use disorder treatment program:

(a) Shall, within twenty-four hours of his or her admission or acceptance at the facility, not counting time periods prior to medical clearance, be examined and evaluated by:

(i) One physician, physician assistant, or advanced registered nurse practitioner; and

(ii) One mental health professional. . . .; and

(b) Shall receive such treatment and care as his or her condition requires. . . . The person shall be detained up to one hundred twenty hours, if, in the opinion of the professional person in charge of the facility, or his or her professional designee, the person presents a likelihood of serious harm, or is gravely disabled. A person who has been detained for one hundred twenty hours shall no later than the end of such period be released, unless referred for further care on a voluntary basis, or detained pursuant to court order for further treatment as provided in this chapter.

. . . .

## RCW 71.05.230

A person detained for one hundred twenty hour evaluation and treatment may be committed for not more than fourteen additional days of involuntary intensive treatment or ninety additional days of a less restrictive alternative treatment. A petition may only be filed if the following conditions are met:

(1) The professional staff of the facility providing evaluation services has analyzed the person's condition and finds that the condition is caused by a behavioral health

disorder and results in: (a) A likelihood of serious harm; (b) the person being gravely disabled; or (c) the person being in need of assisted outpatient behavioral health treatment; and are prepared to testify those conditions are met; and

(2) The person has been advised of the need for voluntary treatment and the professional staff of the facility has evidence that he or she has not in good faith volunteered; and

. . . .

(4)(a)(i) The professional staff of the facility or the designated crisis responder has filed a petition with the court for a fourteen day involuntary detention or a ninety day less restrictive alternative. The petition must be signed by:

(A) One physician, physician assistant, or psychiatric advanced registered nurse practitioner; and

(B) One physician, physician assistant, psychiatric advanced registered nurse practitioner, or mental health professional.

. . . .

(b) If involuntary detention is sought the petition shall state facts that support the finding that such person, as a result of a behavioral health disorder, presents a likelihood of serious harm, or is gravely disabled and that there are no less restrictive alternatives to detention in the best interest of such person or others. The petition shall state specifically that less restrictive alternative treatment was considered and specify why treatment less restrictive than detention is not appropriate. If an involuntary less restrictive alternative is sought, the petition shall state facts that support the finding that such person, as a result of a behavioral health disorder, presents a likelihood of serious harm, is gravely disabled, or is in need of assisted outpatient behavioral health treatment, and shall set forth any recommendations for less restrictive alternative treatment services; and

(5) A copy of the petition has been served on the detained person, his or her attorney and his or her guardian or conservator, if any, prior to the probable cause hearing; and

(6) The court at the time the petition was filed and before the probable cause hearing has appointed counsel to represent such person if no other counsel has appeared; and

(7) The petition reflects that the person was informed of the loss of firearm rights if involuntarily committed for mental health treatment; and

(8) At the conclusion of the initial commitment period, the professional staff of the agency or facility or the designated crisis responder may petition for an additional period of either ninety days of less restrictive alternative treatment or ninety days of involuntary intensive treatment as provided in RCW 71.05.290. . . .

RCW 71.05.240

(1) If a petition is filed for fourteen day involuntary treatment or ninety days of less restrictive alternative treatment, the court shall hold a probable cause hearing within one hundred twenty hours of the initial detention of such person as determined in RCW 71.05.180, or at a time determined under RCW 71.05.148.

(2) If the petition is for mental health treatment, the court or the prosecutor at the time of the probable cause hearing and before an order of commitment is entered shall inform the person both orally and in writing that the failure to make a good faith effort to seek voluntary treatment as provided in RCW 71.05.230 will result in the loss of his or her firearm rights if the person is subsequently detained for involuntary treatment under this section.

. . . .

(4)(a) Subject to (b) of this subsection, at the conclusion of the probable cause hearing, if the court finds by a preponderance of the evidence that such person, as the result of a behavioral health disorder, presents a likelihood of serious harm, or is gravely disabled, and, after considering less restrictive alternatives to involuntary detention and treatment, finds that no such alternatives are in the best interests of such person or others, the court shall order that such person be detained for involuntary treatment not to exceed fourteen days in a facility licensed or certified to provide treatment by the department or under RCW 71.05.745.

. . . .

(c) At the conclusion of the probable cause hearing, if the court finds by a preponderance of the evidence that such person, as the result of a behavioral health disorder, presents a likelihood of serious harm or is gravely disabled, but that treatment in a less restrictive setting than detention is in the best interest of such person or others, the court shall order an appropriate less restrictive alternative course of treatment for up to ninety days.

. . . .

(6) The court shall notify the person orally and in writing that if involuntary treatment is sought beyond the fourteen-day inpatient or ninety-day less restrictive treatment period, the person has the right to a full hearing or jury trial under RCW 71.05.310. If the commitment is for mental health treatment, the court shall also notify the person orally and in writing that the person is barred from the possession of firearms and that the prohibition remains in effect until a court restores his or her right to possess a firearm under RCW 9.41.047.

(7) If the court does not issue an order to detain a person under this section, the court shall issue an order to dismiss the petition.

. . . .

## RCW 71.05.280

At the expiration of the fourteen-day period of intensive treatment, a person may be committed for further treatment pursuant to RCW 71.05.320 if:

(1) Such person after having been taken into custody for evaluation and treatment has threatened, attempted, or inflicted: (a) Physical harm upon the person of another or himself or herself, or substantial damage upon the property of another, and (b) as a result of a behavioral health disorder presents a likelihood of serious harm; or

(2) Such person was taken into custody as a result of conduct in which he or she attempted or inflicted physical harm upon the person of another or himself or herself, or substantial damage upon the property of others, and continues to present, as a result of a behavioral health disorder, a likelihood of serious harm; or

. . . .

## RCW 71.05.290

(1) At any time during a person's fourteen day intensive treatment period, the professional person in charge of a treatment facility or his or her professional designee or the designated crisis responder may petition the superior court for an order requiring such person to undergo an additional period of treatment. Such petition must be based on one or more of the grounds set forth in RCW 71.05.280.

(2)(a)(i) The petition shall summarize the facts which support the need for further commitment and shall be supported by affidavits based on an examination of the patient and signed by:

(A) One physician, physician assistant, or psychiatric advanced registered nurse practitioner; and

(B) One physician, physician assistant, psychiatric advanced registered nurse practitioner, or mental health professional.

. . . .

(b) The affidavits shall describe in detail the behavior of the detained person which supports the petition and shall explain what, if any, less restrictive treatments which are alternatives to detention are available to such person, and shall state the willingness of the affiant to testify to such facts in subsequent judicial proceedings under this chapter. If less restrictive alternative treatment is sought, the petition shall set forth any recommendations for less restrictive alternative treatment services.